Reynaldo Cantu MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 41766.

Court of Criminal Appeals of Texas.

Jan. 8, 1969.

George W. Storter, Jaun E. Gavito, Brownsville, for appellant.

F. T. Graham, Dist. Atty., Brownsville, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is robbery by assault; the punishment, assessed by the court after a jury verdict of guilty, 20 years confinement in the Texas Department of Corrections.

This appeal presents the question of the admissibility of an in-court identification following a police lineup identification where the accused was without the benefit of counsel.

The State's evidence reflects that on January 20, 1968, Zelma Voorhes, 59 years of age, lived alone in the City of Harlingen. At approximately 7 p. m. that day she arrived home from work as a saleslady in a local variety store. Shortly thereafter she answered a knock at her front door and observed a Latin male, whom she later identified as the appellant, who inquired about a lady who had previously lived at the address. During the conversation the living room light afforded Mrs. Voorhes an ample opportunity to observe the caller's facial features, clothing, etc. Being unable to convince the man she was not the lady he sought and did not know the whereabouts of such lady's son, Mrs. Voorhes terminated the conversation by closing the door after which she heard his departing footsteps.

At approximately 9:30 p. m. Mrs. Voorhes, hearing another knock and thinking it was her paper boy, opened the door and again observed the appellant who pushed his way into the house and threatened Mrs. Voorhes with a knife and knocked off her glasses. Thereafter he forced her into the bedroom where he robbed her of $46.00 and then raped her. Subsequently, thinking the appellant had departed, Mrs. Voorhes arose from the bed to dress when she was again confronted by appellant, who repeated his earlier threat to kill her if she moved for 10 minutes. Thereafter the appellant attempted to dismantle or disconnect the telephone and left. Finding the telephone still in operating condition, Mrs. Voorhes called her son-in-law and then the police.

Appellant did not testify and called only one witness, a police officer, in an attempt

to show a variance between Mrs. Voorhes' trial description of the intruder and the description given on the night in question.[1]

In his first ground of error appellant contends the trial court erred in overruling his motion for mistrial made after the prosecutrix testified she had identified him in a police lineup, which was conducted in absence of counsel and without a showing of waiver of counsel.

In his second ground of error appellant contends the trial court erred in admitting the in-court identification of him by the prosecutrix "on grounds that the State failed to show no taint of illegality between the police lineup and the in-court identification." For both grounds of error he cites and relies upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

The record reflects that in his opening statement to the jury (Article 36.01(3) Vernon's Ann.C.C.P.) the prosecutor stated that the State expected to prove that the prosecutrix had identified the appellant at a police lineup less than 2 days after the alleged offense. To such remarks no objection was addressed, nor was any motion in limine or to suppress made. After the prosecutrix had detailed the alleged offense without making an identification of her assailant, the direct examination reflects the following:

"Q. All right. Then on Monday, January the 22nd, what, if anything, occurred in which you participated with regard to this matter?

"A. They called me from the police station and told me they had a man in custody.

"Q. About what time was this?

"A. Oh, it must have been around 3:00.

"Q. In the afternoon?

"A. Yes, sir.

"Q. And in response to that call what did you do?

"A. My daughter and son-in-law took me to the police station.

"Q. All right. Tell us what happened there.

"A. And I was in a room with glass that I could see through but they told me that the people in the other room could not see through.

"Q. A one-way mirror?

"A. Yes, sir.

"Q. All right. And— Excuse me just a moment. Was anyone in the room with you?

---

1. On direct examination Mrs. Voorhes testified:
"Q. * * * Can you describe what this man was wearing or how he was dressed?
"A. He had on a rather dark pair of pants, dark shirt with a white figure in it. He had a jacket. I don't know whether it was a jacket or a sweater. It did not have a collar. It zipped up the front.
"About what size a man was he?
"A. He was about, I'd say, five feet —six and about a hundred and fifty pounds."
Subsequently she testified that when appellant re-appeared he was dressed in the same clothes.
On cross-examination she repeated her earlier testimony and stated she did not remember estimating the intruder's weight to be as high as 170 pounds or his height to be five feet—seven. Further, she stated he had a rough complexion "like kind of pitted, pimplished, acne or something."
Officer Salazar called by the defense, testified that the description of the intruder given by the prosecutrix at 10:30 p. m. on the night in question was as follows:
"Dark jacket, dark shirt and dark trousers. Complainant stated a Latin male about five foot five to five foot seven, 165 to 170 pounds, black hair, natural cut and bushed out a little on the sides, medium dark complexion, rough face, which appears to have acne scars, in his early twenties."

"A. Yes. Mr. Littleton was with me.

"Q. Officer Littleton?

"A. Officer Littleton. And my son-in-law was in the room but he stayed back.

"Q. All right.

"A. And I went up close to the glass and they marched three men in on the other side and lined them up and had them turn around so I could get a real good look at them.

"Q. All right. Were these men Anglos, or Latins, or both?

"A. They were Latins.

"Q. All right.

"A. And I told them that I was positive that the man in the center was the boy but I did want to hear him speak. I wanted him to say, 'If you scream I'll run this knife clear through you,' just like he'd said it to me the night before.

"Q. And did they do that?

"A. They did that. All three of them repeated it. And when this one that was in the center repeated it I told them, 'That is the man.' "

"MR. GAVITO: Excuse me, Mrs. Voorhes, if you please.

We're going to object to any evidence concerning an identification made at a police lineup on the ground that it was conducted in the absence of counsel, in violation of the defendant's constitutional rights, under the Sixth Amendment made applicable to the States by virtue of the due process clause of the Fourteenth Amendment of the Constitution of the United States and for which we cite Gideon vs. Wainwright as authority.

"MR. ELLIS: We submit, Your Honor, that the objection comes too tardy, the witness having already testified and counsel was well aware of what the witness was about to testify to and interposed no objection prior to this testimony.

"THE COURT: Well, I'm going to sustain the objection.

"MR. GAVITO: If the Court please, in view of that, we ask that that testimony be stricken from the record and the Jury instructed not to consider it for any purpose whatsoever. And, further, we are of the opinion that such testimony cannot be cured—that is, the error cannot be cured by mere instructions from the Court not to consider it. We think it is highly prejudicial and inflammatory, and we ask for a mistrial.

"THE COURT: I do instruct the Jury not to consider this identification in the police lineup testimony for any purpose in its deliberations, and I overrule the motion for mistrial.

"MR. GAVITO: Note our exception, please.

"MR. ELLIS: In that connection, Your Honor, I'd like to point out to the Court, which the Court well knows, of course, we cannot show everything by one witness and that we'll attempt to connect this testimony up at a later time with a later witness, at which time, if we do connect it up, we'd like to reoffer it, Your Honor.

"THE COURT: We'll cross that bridge when we get to it.

"MR. ELLIS: Yes, sir."

Subsequently the prosecutrix made an in-court identification of the appellant as her assailant only after which the appellant objected to such identification on the grounds set forth in his second ground of error.

Wade and Gilbert, cited by appellant, were fashioned to deter law enforcement authorities from exhibiting an accused to witnesses prior to trial for identification purposes without notice to and in the ab-

sence of counsel absent an intelligent waiver by the accused.

These cases clearly hold that a criminal suspect cannot be subjected to a pretrial identification process in the absence of counsel without violating the Sixth Amendment. If he is, the prosecution may not support or buttress a later in-court identification of the witness by any reference to the previous identification. Still further, the in-court identification is not admissible at all unless the prosecution can establish by clear and convincing proof that the testimony is not the fruit of the earlier identification made in the absence of the accused's counsel. See also Pearson v. United States, (5th Cir.) 389 F.2d 684.

These cases do not mean that if a lineup, showup or pretrial identification process is properly conducted in presence of counsel or after an intelligent waiver thereof, such identification cannot be used as it has in the past. They do mean, however, that once the pretrial identification procedure is shown to be impermissible and improper it cannot be used in place of an in-court identification or to bolster the same and is excludable per se. Still further, they mean that any subsequent in-court identification, though not per se excludable, is not to be received into evidence without first determining that it was not tainted by the illegal lineup or pretrial identification procedure but was of independent origin. Gilbert v. California, 388 U.S. at p. 272, 87 S.Ct. at p. 1956.

In determining whether the in-court identification is of an independent origin or source, the Court in Wade said, "We think it follows that the proper test to be applied in these situations is that quoted in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 [455]:

" '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." See also Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374, 386.

The Supreme Court did suggest guiding criteria for the application of this test. For example: (1) prior opportunity of the witness to observe the alleged criminal act; (2) the existence of any discrepancy between any pre-lineup description and the actual appearance of the accused; (3) any identification prior to the lineup of another person; (4) the identification by picture prior to the lineup; (5) failure to identify the accused on a prior occasion; and (6) lapse of time between the act and the identification.

■ It is of course, well established that the rules announced in Wade and Gilbert apply only to lineups taking place after Monday, June 12, 1967. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Pearson v. United States, supra; Crume v. Beto, (5th Cir.) 383 F.2d 36.

■ As to lineups occurring prior to that time, Stovall, supra, made clear that it remains open to all such persons to allege and prove, as Stovall attempted to do, that the confrontation resulted in such unfairness that it infringed his right to due process of law or "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law" based upon "the totality of the circumstances surrounding it." See also Cline v. United States, (8th Cir.) 395 F.2d 138.

Since Gilbert and Wade this Court, as well as others has had to concern itself with the problems of pre-Wade-Gilbert lineups and due process. See Graham v. State, Tex.Cr.App., 422 S.W.2d 922; Cobbins v. State, Tex.Cr.App., 423 S.W.2d 589 (concurring opinion); Smith v. State, 437 S.W.2d 835; Simmons v. United

States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247; Crume v. Beto, supra; Pearson v. United States, 389 F.2d 684; State v. McKissick, 271 N.C. 500, 157 S.E.2d 112 (N.C.); State v. Dunlap, 271 N.C. 508, 157 S.E.2d 118 (N.C.); People v. Ballott, 20 N.Y.2d 600, 286 N.Y.S.2d 1, 233 N.E.2d 103; State ex rel. Ford v. Tahash, 278 Minn. 358, 154 N.W.2d 689; People v. Smiley, 54 Misc.2d 826, 284 N.Y.S.2d 265; People v. Feggans, 67 A.C. 447, 62 Cal. Rptr. 419, 432 P.2d 21; People v. Caruso, 65 Cal.Rptr. 336, 436 P.2d 336 (Cal.); United States v. Quarles, 387 F.2d 551 (4th Cir.); State v. Batchelor, 418 S.W. 2d 929 (Mo.); State v. Hill, 419 S.W.2d 46 (Mo.); State v. Keeney, 425 S.W.2d 85 (Mo.); Burton v. State, 437 P.2d 861 (Nev.); Barker v. State, 438 P.2d 798 (Nev.); Cline v. United States, supra; Coleman v. State, 44 Ala.App. 429, 211 So.2d 917; Com. v. Bumpus, 238 N.E.2d 343 (Mass.); State v. Matlack, 49 N.J. 491, 231 A.2d 369; State v. Sinclair, 49 N.J. 525, 231 A.2d 565; Rath v. State, 3 Md.App. 721, 240 A.2d 777; State v. Simmons, 98 N.J.Super. 430, 237 A.2d 630; People v. Brown, 20 N.Y.2d 238, 282 N.Y.S. 2d 497, 229 N.E.2d 192; People v. Ayala, 89 Ill.App.2d 393, 233 N.E.2d 80 (Ill.); State v. Sears, 182 Neb. 384, 155 N.W. 2d 332 (Neb.); State v. Nelson, 156 S.E.2d 341 (S.C.); Fogg v. Com., 208 Va. 541, 159 S.E.2d 616; U. S. ex rel. Geralds v. Deegan, 292 F.Supp. 968; Clemons v. United States (D.C.Cir.) 4 Cr.L. 2221 (Dec. 6, 1968).

The lineup in the case at bar, however, occurred on January 22, 1968, and therefore the rules of Wade and Gilbert are fully applicable.

■ Turning to appellant's first ground of error, there can be no question but what the prosecutor erred in not demonstrating that appellant had counsel at the lineup or had intelligently waived the same before eliciting lineup identification from the complaining witness. It is observed, however, that appellant was put on notice by the prosecutor's opening statement that such evidence would be used and he took no action at the time, and subsequently waited until the lineup identification was before the jury before objecting. The court promptly instructed the jury to disregard and under these circumstances we perceive no reversible error. There appears to be no bad faith on the part of the prosecutorial authorities. In fact, appellant's counsel expressed the opinion in oral argument that the police at the lineup and the prosecutor at the trial were all unaware of the Wade and Gilbert rulings. It is fundamental that a timely objection to inadmissible evidence must be urged at the first opportunity. This was not done, nor has appellant shown a reason for delaying his objection. Renfro v. State, 156 Tex. Cr.R. 400, 242 S.W.2d 772. In light of the court's instructions we cannot agree that the error, under the facts presented, was so fundamental or so highly prejudicial as to deprive the accused of a fair trial thereby excusing the tardy objection.

■ Identification has now assumed a constitutional dimension and we are well aware that constitutional rights cannot be easily waived, but even if we be wrong in our holding, we are able as was the trial court to declare our belief, on the record before us, that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, 711; Gilbert v. California, supra.

■ As to appellant's second ground of error, it would have unquestionably been better practice, particularly in view of the court's ruling on the lineup identification, for the State to have first shown in absence of the jury that the in-court identification about to be offered was not tainted by the illegal lineup. Apparently being satisfied from the record, the trial court overruled appellant's objection made after the courtroom identification was already

before the jury. Thereafter appellant did not request a separate hearing on the matter or any other relief. On the motion for new trial without either party offering or requesting to offer any additional testimony the court stated it found that the in-court identification came from a source independent of and was not tainted by the police lineup identification and that appellant was not deprived of due process. In making this determination the trial court took into consideration the various factors or guiding criteria set forth in Wade v. United States, supra. Its findings are supported by the record before us. The prosecutrix had ample opportunity to observe under good lighting conditions the accused on two occasions just prior to the alleged offense as to his complexion, height, weight and clothing. Her description of her assailant given to the police shortly after the attack while his appearance was fresh on her mind was specific and detailed and there is no showing of any serious discrepancy between such pre-lineup description and the appellant's actual description. Further, there is no showing that the prosecutrix had made an identification of appellant by picture prior to the lineup, or had failed to identify appellant on a prior occasion, or had identified someone else as her attacker. The lapse of time between the act and the lineup identification was less than 48 hours. While the State failed to prove that the appellant had counsel at the time or had waived the same, there is nothing in the record to indicate that the confrontation was suggestive. While the absence of counsel flawed the confrontation, the record refutes the notion of a susceptible victim dutifully echoing a crystalized mistaken identification. All of this furnishes clear and convincing proof that the in-court identification was of an independent origin.

Ground of error # 2 is overruled.

While we have found no reversible error, the procedure here employed is not recommended for handling of the Wade-Gilbert identification questions when they arise. These cases have undoubtedly raised more questions for law enforcement authorities at the lineup and the bench and bar during trial than they tend to solve. Further, the Supreme Court was not as explicit as it could have been as to the procedure to be employed.

■ Whether in-court or courtroom identification is tainted or not by pretrial identification is most properly made in the trial court. The initial decision as to the reliability of the identification procedure is and should be within the discretion of the trial court which has the unique opportunity to evaluate the witnesses and to get the feel of the case.

■ It is recommended that in future trials before a jury, once the in-court identification of the accused is sought to be introduced and the court is apprised that the identification is questioned on the basis of a prior police station or lineup identification, then upon motion of the defense counsel a hearing should be held outside the presence of the jury. The issue of admissibility should be determined before such evidence is placed before the jury. Should the court, at such hearing, determine that such identification at the police station or elsewhere was violative of the Wade and Gilbert mandates or of due process,[2] then the prosecution is precluded from offering any evidence of such identification before the jury.

In such an eventuality the witness can still identify the accused in court as the perpetrator of the offense charged subject

2. It should be borne in mind that even in post Wade and Gilbert cases, questions concerning the conduct of the lineup may be relevant in determining the origin of an in-court identification. Pearson v. United States (5th Cir.) 389 F.2d 684.

to, but not limited by, the test set forth in United States v. Wade, supra, when the court has found that the in-court identification is not tainted by the illegal lineup, etc. See People v. Smiley, supra. See also People v. Ballott, supra.

 For the purposes of appellate review, it would be better practice for the court to enter written findings or to state into the record following such hearing his reasons for admitting such evidence, if he does.

In such hearings it must be remembered that the burden is upon the prosecution to establish by "clear and convincing proof" that the testimony is not the fruit of the earlier identification made in the absence of counsel or intelligent waiver of counsel.

"The phrase 'clear and convincing' evidence has been defined as 'clear, explicit, and unequivocal', 'so clear as to leave no substantial doubt', and 'sufficiently strong to command the [petition of] unhesitating assent of every reasonable mind.'" In re Jost (1953), 117 Cal.App. 2d 379, 383, 256 P.2d 71, 74.

Such definition was approved by the California Supreme Court recently in dealing with a lineup identification question. People v. Caruso, supra.

The foregoing, of course, discusses trial procedure, but we see no reason why upon proper motion or showing that such determination may not, within the discretion of the trial court, be disposed of upon a pretrial hearing. See Article 28.01, V.A. C.C.P. This would, at least, prevent stopping a trial in midstream to hold a lengthy "tainted fruit" hearing which concerned Mr. Justice Black in his dissent in Wade.

Finding no reversible error, the judgment is affirmed.

DOUGLAS, J., not participating.