**Hardy HARRISON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 46381.

Court of Criminal Appeals of Texas.

June 27, 1973.

Lawrence R. Green (Court appointed on appeal), Dallas, for appellant.

Henry Wade, Dist. Atty., and John E. Rapier, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for robbery. After the jury returned a verdict of guilty, punishment was assessed by the court at thirty years.

Appellant was identified as one of the two men who entered a Safeway store at Marsalis and Illinois Streets, in Dallas, at about 9 P.M., on December 22, 1970. Both men were wearing ladies' stockings over their heads. According to Barbara Oliver, cashier, and Clarence Davis, manager of the store, appellant stood by the door with a knife in his hand while his companion, later identified as Roy Edward Lee, approached Mrs. Oliver with a gun in hand and demanded that she take the money from the cash drawer and place it in a pillow case supplied by the robbers. A description of the car used by the robbers in leaving the scene was given police and shortly thereafter a car answering the description was stopped by Officer Goin, of the Dallas Police Department. The occupants of the car were identified as appellant, Lee, and a third man, Milton Heslip, who was the driver of the car. A search of the car revealed a pillow case containing $163.00 (the amount of money Mrs. Oliver testified that had been taken from her in the robbery), a knife and a gun Mrs. Oliver identified as appearing to be the same knife and gun used in the robbery and ladies' stockings. Appellant testified in his

own behalf and denied taking part in the robbery. Co-defendant Heslip, called as rebuttal witness by the State, testified that he was the driver of the car, and that appellant and Roy Edward Lee entered the Safeway store at the time in question for the purpose of "going in there to hold them up."

At the outset, appellant contends the court erred in not permitting him to impeach a State's witness.

Milton Heslip was called as a rebuttal witness by the State, and the following testimony was elicited from him out of the presence of the jury on voir dire examination by appellant:

"Q You're supposed to be brought to trial today?

"A I have a trial also.

"Q Today?

"A Well, supposed to be set today, yes.

"Q So thats the reason you're coming down now to give testimony against this man here, is that right?

"A Against what man?

"Q Well, this man here.

"A Who is that man?"

The State then elicited testimony from Heslip (outside the presence of the jury) that appellant had participated in the robbery. Before the jury was returned to the courtroom further examination of Heslip by appellant reflects the following:

"Q In other words, you want to change your sworn testimony when you told me a minute ago, or two minutes ago that you didn't know this man.

"A Yes. This man, I said what man.

"Q You didn't _ _ _

"A You didn't say this guy.

"Q Well, I wasn't with you, was I?

"A No, you wasn't.

"Q All right. So it had to be him, you said, 'I don't know that man,' that way.

"A You said this man, you didn't point to him."

After the jury was returned to the courtroom, Heslip testified on direct examination that he drove appellant and Lee to the Safeway store at the time in question. Heslip waited in the car while appellant and Lee were "Going in there to hold them up." Heslip identified the knife, pistol, pillow slip and stockings recovered from the car and testified about Lee and appellant pulling the stockings over their heads. On cross-examination, the record reflects the following:

"Q Before I talked to you, outside the presence of the jury, you said you didn't know that man, isn't that correct, isn't that correct?

"A Not correct.

"Q You didn't say it?

"A You asked me this: You said this man, and I asked you what man.

"Q What man could I be talking about. There was only two of us sitting here, and you said it wasn't me.

"A. You didn't say what man, you said this man, I asked you what man.

"Q Oh, I see, so you thought it might have been me, hadn't seen me before, is that right?

"A. Couldn't thought it was you.

"Q But you said you didn't know that man and I'll ask the court reporter to read it back to the jury."

The court denied appellant's request to have the court reporter read the testimony of Heslip taken out of the presence of the jury. This ruling by the court constitutes the basis of appellant's complaint.

■■■ On cross-examination, the witness admitted that he had responded to ap-

pellant's question about "coming down here to give testimony against that man" by asking a question, "Against what man?" The next question by appellant was, "Well, this man here?" The only thing that a reading of the court reporter's notes would have revealed that was not in evidence before the jury was the response by the witness, "Who is that man?" The witness never stated, as appellant's question suggested, that he did not know appellant. It is impossible to look into the inner recesses of the witness' mind to determine if "Who is that man?" meant who was referred to in appellant's question by the term "this man" or if the witness was inquiring as to the identity of the appellant. The testimony of the witness leaves much to be desired from the standpoint of clarity, but it appears that an attempted explanation for the answer was made by the witness when he said, "You said this man, you didn't point to him." It is axiomatic that a witness must deny having made a prior inconsistent statement before such statement is admissible for impeachment. 62 Tex.Jur. 2d, Witnesses, Section 309. Even if the court was in error in denying appellant's request that the testimony out of the presence of the jury be read by the court reporter, we conclude that such refusal was harmless error and was not so prejudicial as to require reversal. See Phenix v. State, Tex.Cr.App., 488 S.W.2d 759. Where the evidence of guilt is clearly established, even constitutional error may be harmless. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The evidence establishing guilt of appellant in the instant case was overwhelming. We perceive no reversible error.

Appellant contends that the court erred in refusing to permit appellant to take a witness on voir dire on question of identity.

After Mrs. Oliver had testified regarding the participation of two men in the robbery, the record reflects:

"Q  Do you see either one of those men in the courtroom today?

"A  Yes, I do.

"Q  Would you point him out for the jury, please?

"A  The Defendant, sitting over there.

"MR. DONOSKY: (Appellant's Counsel)  May I take her on voir dire?

"THE COURT:  To establish what?

"MR. DONOSKY: Well, how does she know he's the defendant."

The basis of appellant's contention arises from the court's refusal of appellant's request.

In support of this contention, appellant cites Martinez v. State, Tex.Cr. App., 437 S.W.2d 842. In *Martinez,* this Court recommended: "once the in-court identification of accused is sought to be introduced and the court is apprised that *the identification is questioned on the basis of a prior police station or line up identification,* then upon motion of the defense counsel a hearing should be held outside the presence of the jury." (emphasis supplied) Appellant made no suggestion that the courtroom identification was tainted by a line up or any impermissibly suggestive procedure employed by the State. It is not contended that appellant was denied the right of cross-examination. In fact, the record reflects extensive cross-examination of the witness. Later in the trial, Mrs. Oliver was recalled as a witness by appellant. We find appellant's reliance on Martinez v. State, supra, to be misplaced and conclude that the court was not in error in refusing appellant the right to voir dire the witness after she had made an in-court identification of appellant.

Appellant contends that it was fundamental error for the State to call co-defendant Lee as a witness and "force him to refuse to testify."

The record reflects that co-defendant Lee had pled guilty to the instant offense and was serving time for this offense in the Texas Department of Corrections at the time of trial. When Lee was asked who was with him at the robbery of the Safeway store on December 22, 1970, he answered, "I don't have any comment." The jury was retired and the court advised Lee that he did not have "to give evidence that is incriminating or shows you to be guilty of some crime." Lee responded that he did not want to testify, and the record reflects no further examination of Lee.

The appellant argues that prior to calling the witness Lee the State had no discussion with the witness as to whether he would testify, and the State should have known that the witness would refuse to testify. Appellant urges that the State, in effect, forced accomplice witness Lee to refuse to testify in the presence of the jury to the prejudice of appellant, and that such action on the part of the State constituted fundamental error. No authorites are cited. Appellant's argument appears to be bottomed on the assumption that the witness Lee still had the right to claim the privilege against self incrimination in a case where he had already entered a plea of guilty. In Cherb v. State, Tex.Cr.App., 472 S.W.2d 273, this Court held that accomplice's privilege against self incrimination ceased to exist after entry of a plea of guilty. See United States v. Hoffman, 385 F.2d 501 (7th Cir., 1967). We reject appellant's contention that the State's action in calling the witness Lee to testify constituted fundamental error.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.