Antonio ORTEGA, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–81–0015–CR.

Court of Appeals of Texas,
Amarillo.

Feb. 19, 1982.

David D. Garza, Lubbock, for appellant.

John T. Montford, Criminal Dist. Atty., Jim B. Darnell, Asst. Criminal Dist. Atty., for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

COUNTISS, Justice.

The offense is burglary of a habitation with intent to commit rape. The punishment is 15 years imprisonment. We affirm.

The following sequence of events was developed by the State's evidence. In the early morning hours of August 12, 1979, the prosecutrix came home from work and went to bed. A few minutes after she retired, a man entered her house. She immediately left the house and stood outside near the front door until the man came up behind her and grabbed at her. She then ran to a neighbor's house and started knocking on the door and calling to the neighbor. The man came up behind the prosecutrix again, hit her in the head and pushed her into a nearby field. He threw her to the ground, choked her and hit her, then pulled his pants down and her gown up. Thereafter, the man lay on the prosecutrix and attempted, unsuccessfully, to have sexual intercourse with her. After a few minutes, the man stood up and the prosecutrix also got up. When he took her by the shoulders "like he was going to try to have sex standing up" she broke away and ran back to the neighbor's house.

Police Officer Logan of the Lubbock Police Department had responded to a call from the neighbor and was at the neighbor's house when the prosecutrix arrived. Police Officer Moody arrived a few minutes later and the prosecutrix described her assailant to them as a short Mexican male with dark hair, wearing a T-shirt. She directed the officers to the field where the attempted rape occurred and they began a search of the field. They soon found appellant, who matched the description given by the prosecutrix, lying on his back in the field with his pants down and his shoes off.

The officers handcuffed appellant after a struggle, placed him in a patrol car and

returned to the neighbor's house. Officer Logan asked the prosecutrix if she could identify her assailant and, when she said she could, he took her to the patrol car. She looked at appellant and said, "Yes, that's him." Approximately 30 minutes elapsed between the time of the incident and the time the prosecutrix viewed appellant in the patrol car. Appellant was then charged with the offense in question here.

The prosecutrix was unable to identify appellant at the trial. She testified, however, that the man in the patrol car on the night of the incident was her assailant and the police officers identified appellant at the trial as the man in the patrol car.

Appellant denied having any contact with the prosecutrix. He testified he spent the afternoon and evening prior to the events in question with a friend in the Blow-Up Lounge, where he had a small amount to drink. At approximately 1:00 a. m., he started walking home. While he was crossing the field where the police officers later found him, he stopped to urinate and fell asleep. When he awoke, the police officers had him in handcuffs.

On the first day of the trial, while various preliminary matters were transpiring in the courtroom, the prosecutrix and officers Logan and Moody looked through the windows in the courtroom door and observed appellant. One officer testified he did so at the request of one of the prosecutors and the other officer testified he did so on his own initiative. The prosecutor involved in the matter admitted that he suggested to the prosecutrix that she look in the courtroom to see if she could identify her assailant. He stated that one of the reasons he did so was because, in his opinion, an effort had been made to alter the appearance of a third year law student, who was assisting the defense counsel, to resemble appellant. There was no evidence that the prosecuting attorney pointed out the appellant for the witnesses. Both officers testified their identification of appellant in the courtroom was based upon their observation of him on the night of the arrest, not on their viewing of him at the trial.

The jury convicted appellant and assessed his punishment at 15 years confinement in the Texas Department of Corrections. Appellant presents four arguments under five grounds of error in this court. We will consider the grounds in the order presented.

By his first and second grounds appellant attacks the showup identification evidence. He contends the trial court should not have permitted the prosecutrix to testify that the man arrested on the night of the incident was her assailant and the officers should not have been permitted to testify that appellant was the man arrested and identified by prosecutrix. The showup procedure, argues appellant, was too suggestive and conducive to irreparable mistaken identification.

It is settled that a one-on-one showup identification, conducted soon after the criminal activity has occurred, *Waller v. State*, 581 S.W.2d 483, 484 (Tex.Cr.App. 1979) or under emergency circumstances, *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), is not illegal per se. The test, as appellant recognizes, is the same used in analyzing other pre-trial identification procedures, i.e., whether the confrontation was, under the totality of the circumstances, (1) so unnecessarily suggestive and (2) so conducive to irreparable mistaken identification, that the defendant was denied due process of law. *Id.* at 301–302, 87 S.Ct. at 1972; *Banks v. State*, 530 S.W.2d 940, 942 (Tex.Cr.App.1975).

The first inquiry, then, is whether the showup was unnecessarily suggestive. It is, of course, fallacious to believe there are no suggestive elements in a one-on-one showup identification. The very nature of such a procedure, conducted in the presence of law enforcement officers, is suggestive. The issue, however, is whether the confrontation is so unnecessarily suggestive as to deny due process to the accused.

In this case, the prosecutrix told the officers she could identify her assailant, and did so immediately upon seeing him, within 30 minutes after the attack. There is no evidence of uncertainty or hesitency by her

nor is there anything in the record to indicate that the police officers did or said anything that influenced the identification. We are satisfied the showup was not unconstitutionally suggestive.

■ The second inquiry is whether the showup was conducive to irreparable mistaken identification. In that regard, five factors have been formulated for evaluating the likelihood of misidentification because of pre-trial identification procedures: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *McGee v. Estelle*, 632 F.2d 476, 478 (5th Cir. 1980).*

■ When the evidence is evaluated in light of the foregoing standards, we are satisfied there was not a likelihood of irreparable misidentification. First, the prosecutrix was with her assailant in an intimate situation for approximately 10 to 15 minutes. Even though it was at night, there is no evidence to indicate that the prosecutrix could not have seen the prominent features of a person in such close proximity. Second, it is certainly reasonable to infer from the evidence that the prosecutrix's entire attention was devoted to her assailant while the attack was in progress. Third, Mrs. Williams provided a reasonably accurate description of appellant, telling officers that he was a short, Mexican male, with dark hair, with a tee shirt on and his pants undone. Fourth, the police officers and the prosecutrix testified that she said, without prodding, "that's him," when she viewed the appellant. Fifth, not more than 30 minutes elapsed between the time of the crime and the time of the confrontation.

Thus, we are satisfied the trial court did not err in permitting the prosecutrix to testify that the man in the police car was her assailant. As stated in *Martinez v. State*, 437 S.W.2d 842, 848 (Tex.Cr.App. 1969), "the record refutes the notion of a susceptible victim dutifully echoing a crystalized mistaken identification." It follows that there was also no error in permitting the police officers to identify appellant as the man arrested on the night of the incident, pursuant to the prosecutrix's complaint and description, and to state that she identified him as her assailant. Points of error one and two are overruled.

By his third ground of error, appellant contends the trial court erred in finding the in-court identification of the police officers to be untainted and of independent origin. Appellant argues that the action of the officers in viewing appellant through the windows of the courtroom door prior to testifying was an illegal lineup and fatally tainted their identification testimony.

■ Assuming, arguendo, that (1) the officers' action in viewing appellant through the window was an improper lineup and (2) the procedures and burdens set out in *Martinez v. State*, 437 S.W.2d 842 (Tex.Cr.App. 1969) apply to the testimony given by the officers in this case, we find no error in permitting the officers to testify. The trial court conducted a *Martinez* hearing, where it heard evidence that the officers' identification was based on their observations of appellant on the night of his arrest. The testimony in that regard is clear and unequivocal. Thus, the trial court was entitled to conclude that there was "clear and convincing proof," *Martinez*, 437 S.W.2d at 849, that the officers' identification was not the fruit of an improper lineup procedure. It was not, therefore, error to admit the testimony. Ground of error three is overruled.

Under his fourth ground of error, appellant argues he was entitled to an instructed verdict because the prosecutrix exonerated him by her testimony. On direct examination the prosecutrix testified as follows:

---

* "[T]here is no requirement that positive findings be made on all five factors before a court can find there is not a substantial likelihood of misidentification." *Landry v. State of Alabama*, 579 F.2d 353, 355 (5th Cir. 1978).

Q Now, ... do you see anyone in the courtroom today that you saw out there that night as the man that came into your house and took you to that field and later you identified as being in the police car?

A I thought the man in the middle kind of favored him, but now he don't, so I don't see him.

Q So you don't see anyone in the courtroom that resembles that man?

A No.

Q Okay.

On cross examination, she said:

Q And it's your testimony that you could not identify the man now, is that correct?

A No, I can't.

 When a complaining witness specifically testifies that the defendant is not the person who committed the offense, the defendant is entitled to an acquittal, *Bullard v. State*, 533 S.W.2d 812, 816 (Tex.Cr.App. 1976); *Wall v. State*, 417 S.W.2d 59, 62 (Tex.Cr.App.1967), unless the state can otherwise connect defendant with the crime by "legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him." *Phillips v. State*, 164 Tex. Cr.R. 78, 297 S.W.2d 134, 135 (1957).

In this case, the prosecutrix did not exonerate appellant of the crime. She was simply unable to identify him as its perpetrator. However, there was other evidence, as outlined above, sufficient to connect him with the crime and sustain the conviction. Ground of error four is overruled.

Appellant's final ground of error states that he was entitled to an instructed verdict because the evidence was insufficient to sustain the conviction. Specifically, appellant argues that the state failed to prove he entered the prosecutrix's home, which is an essential element of the burglary alleged in the indictment. Tex.Penal Code Ann. § 30.02(a)(1) (Vernon 1974).

We have reviewed the evidence in the light most favorable to the verdict, *Vaughn v. State*, 607 S.W.2d 914, 920 (Tex. Cr.App.1980) and are satisfied it is sufficient. The prosecutrix testified that she was in bed when a man walked into her house. He followed her outside, pushed her into the field, attempted to rape her and was eventually arrested in the field. As discussed above, that man was identified as appellant. Thus, there was evidence that appellant entered the habitation. Ground of error five is overruled.

The judgment is affirmed.