Mike ORTEGA, Appellant,

v.

STATE of Texas, Appellee.

No. 13–81–166–CR.

Court of Appeals of Texas,
Corpus Christi.

May 27, 1982.

Rehearing Denied Aug. 26, 1982.

Discretionary Review Granted
Nov. 17, 1982.

Joseph A. Connors, III, McAllen, for appellant.

Reynaldo Cantu, Jr., Dist. Atty., Brownsville, for appellee.

Before NYE, C.J., and BISSETT and YOUNG, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a conviction for credit card abuse. Tex.Penal Code Ann. § 32.31(b)(1)(A) (Vernon 1974). Trial was before a jury. Punishment was assessed by the jury at two years confinement in the Texas Department of Corrections.

The defendant, through his attorney's excellent brief, raises eighteen grounds of error. Since the sufficiency of the evidence to support the conviction is challenged, we summarize the evidence.

On November 27, 1979, the defendant's sister, Janie Saenz, and Marie Marcella Landez went to a friend's house to have their hair cut. As the two women were leaving their friend's house, Janie found a credit card on the ground. She picked it up and put it in her purse. Marie gave Janie a ride back to her house, and then went home. Later that night, Janie looked in her purse and discovered that it was Marie's Sears' credit card she had found. Marie was unaware that she had lost the credit card.

Janie testified that on the morning after she found the credit card she took her three children to school and then went to the defendant's house. She borrowed the defendant's truck and left him her car. She then went from McAllen, where she lived, to the Sears store in Brownsville. No one accompanied her to Brownsville. She made numerous purchases at the Sears store in Brownsville with Marie's credit card. On her trip back to McAllen, she stopped at the Sears store in Harlingen and made additional purchases with Marie's credit card.

When Janie returned to her home in McAllen, she unloaded the merchandise she had purchased, picked up her children and then returned to the Sears store in Brownsville. During her second visit to the Sears store, Janie let her children choose the items they wanted, which she purchased with Marie's credit card. Janie and her children returned to McAllen, where they made additional purchases at the McAllen Sears store. She gave some of the merchandise to the defendant and other family members as Christmas gifts. Janie was arrested on January 23, 1980.

Ninfa Escobedo, a saleslady at the Sears store in Brownsville, testified that the defendant and two women used Marie's credit card to make various purchases on November 28, 1979. Elizabeth Sheldon, also a saleslady at the Sears store in Brownsville, testified that the defendant presented Marie's credit card to her and attempted to purchase an electric shaver with the card. Ms. Sheldon noticed that the credit card was issued to a woman and refused to accept it. The defendant then told her that the card belonged to his sister and that he would get her to sign for it. Shortly thereafter, the defendant returned with a woman who signed the charge receipt for the electric shaver and three bottles of men's cologne.

Luis Beltran, Jr., security manager for the Sears stores in South Texas, testified that he was informed of a large amount of unauthorized purchases made with Marie's credit card. He was able to ascertain which employees had handled the sales because their employee numbers were written on each sales slip. He interviewed Ms. Escobedo and Ms. Sheldon and obtained a description of the persons who made the purchases. He then talked with Marie and asked her if she knew anyone matching those descriptions. She informed him that she was certain Janie Saenz was one of the women described and suspected the defendant as being the man described. Marie gave Mr. Beltran three photographs, which included a photograph of the defendant. Mr. Beltran exhibited the photograph of the defendant to Ms. Escobedo and Ms. Sheldon. Both women identified the person in the

photograph as the man who made the unauthorized purchases with Marie's credit card.

Sometime later, Mr. Beltran brought a police detective to talk with Ms. Escobedo. The detective, outside the presence of Mr. Beltran, exhibited a portfolio of photographs to Ms. Escobedo. She picked the defendant's photograph as depicting the man who presented Marie's credit card to her.

Marie Marcella Landez testified that she had known the defendant and his sister for over fifteen years. She had not authorized any of the credit purchases in question.

The defendant testified that he had never used or presented Marie's Sears credit card for any purpose. He said that on November 28, 1979, he was attending classes at the Pan American University in Edinburg. He admitted that his sister gave him a pair of boots from Sears, but he denied knowing how they were purchased. The boots, however, did not fit, so he returned them to the Sears store and received cash in exchange for them. He gave the Sears employee his correct name, address and phone number at the time of the exchange.

In January of 1980, the Cameron County Grand Jury issued three indictments charging the defendant and his sister Janie with credit card abuse. The trial of the defendant's sister was severed from that of the defendant. Each indictment alleged that the defendant and his sister:

"on or about the 28th day of November A.D. One Thousand Nine Hundred and Seventy-nine and anterior to the presentment of this indictment, in the County of Cameron and State of Texas, did then and there unlawfully, intentionally and knowingly with intent to fraudulently obtain property and services from NINFA ESCOBEDO, did use and present a credit card, a SEARS, ROEBUCK AND Co., Card Number 57 85272 08504 5, with knowledge that the card had not been issued to them, the said MIKE ORTEGA and JANIE SAENZ and that said card was not used with the effective consent of the Cardholder, MS. MA MARCELLA LANDEZ,"

The defendant contends that the indictment is fundamentally defective because it does not allege that the defendant used the credit card *knowing* that he did not have the effective consent of the cardholder to use the card.

The elements of credit card abuse under Section 32.31(b)(1)(A) of the Penal Code are:

"1) a person

2) with intent to obtain property or services fraudulently

3) presents or uses

4) a credit card

5) with knowledge that it has not been issued to him and

6) with knowledge that it is not used with the effective consent of the cardholder."

*Ex Parte Williams,* 622 S.W.2d 876, 877 (Tex.Cr.App.1981); *Baker v. State,* 593 S.W.2d 719, 720 (Tex.Cr.App.1980); *Ex Parte Walters,* 566 S.W.2d 622, 624 (Tex.Cr. App.1978).

In *Ex Parte Walters,* supra, the Court of Criminal Appeals held it to be fundamental error for an indictment charging an offense under Section 32.31(b)(1)(A) to fail to allege that the defendant used the card with *knowledge* that he did not have the effective consent of the cardholder to use the card. *Ex Parte Walters, supra* at 624. See also: *Baker v. State,* 593 S.W.2d 719, 720 (Tex.Cr.App.1980); *Ex Parte Sharpe,* 581 S.W.2d 183, 184 (Tex.Cr.App.1979); *Guster v. State,* 580 S.W.2d 363, 364 (Tex.Cr.App. 1979); *Ex Parte Dawson,* 578 S.W.2d 749, 750 (Tex.Cr.App.1979); *Ex Parte Reed,* 574 S.W.2d 161, 162 (Tex.Cr.App.1978); *Ex Parte Mathis,* 571 S.W.2d 186, 187 (Tex.Cr. App.1978).

■ In the case at bar, the indictment alleged that the defendant unlawfully used and presented the credit card *"with knowledge* that the card had not been issued [to him] *and* that said card was not used with the effective consent of the Cardholder." [emphasis added] Thus, the indictment alleged that the defendant had *knowledge:* 1)

that the card was not issued to him, *and* 2) that his use was without the effective consent of the Cardholder. We hold that the indictment satisfies the requirements of Ex Parte Walters and its progeny. *Allison v. State,* 618 S.W.2d 765, 766 (Tex.Cr.App. 1981); *Ex Parte Kimberlin,* 594 S.W.2d 438, 439 (Tex.Cr.App.1980).

Prior to trial, the defendant's attorney filed a motion to quash the indictments on the ground that they failed to allege what property was obtained by use of the credit card. The defendant's attorney argued that without such an allegation, it was impossible to precisely know the particular offense charged. He also argued that the defendant could not impose a plea of double jeopardy to bar any possible further prosecution unless the indictment described the property obtained. Following a hearing, the trial court overruled the motion to quash. The defendant now contends that the trial court erred in overruling his motion to quash the indictments.

In *Stribling v. State,* 542 S.W.2d 418 (Tex.Cr.App.1976), the court was confronted with a contention similar to the one we face. In that case, however, the defendant did not move to quash the information. The court held:

"The description of the property obtained by use of the card and the identity of the person from whom it was obtained affect the certainty of the allegations and notice, and complaints regarding their sufficiency must be raised in the trial court. Arts. 21.21(7) and 27.09(2), V.A.C.C.P.; *Johnson v. State,* 541 S.W.2d 619 (Tex.Cr. App.1976)." *Id.* at 419.

Since the defendant in the instant case filed a motion to quash the indictment for failure to allege what property was obtained, we must now decide if he was entitled, upon motion, to such allegations.

█ An indictment which charges an offense in the terms of the statute is generally sufficient. *Ex Parte Holbrook,* 609 S.W.2d 541, 543 (Tex.Cr.App.1980); *Johnson v. State,* 541 S.W.2d 619, 621 (Tex.Cr.App. 1976). The elements of an offense under Section 32.31(b)(1)(A) are set out above.

With respect to property, all that need be alleged is that the defendant *intended to obtain property;* whether he actually obtained property is not an element of the offense.

In *Thomas v. State,* 621 S.W.2d 158 (Tex. Cr.App.1981) the Court held:

"The general rule is that a motion to quash will be allowed if the *facts* sought are *essential* to giving notice." *Id.* at 161.

█ We fail to see how a description of the property obtained by the defendant is *essential* to giving him notice of the crime charged. We hold that such information is essentially evidentiary, which need not be pled in the indictment. *See Phillips v. State,* 597 S.W.2d 929, 935 (Tex.Cr.App. 1980). The indictment alleged all the constituent elements of credit card abuse and, therefore, it was sufficient to give the defendant precise notice of the particular offense charged and to bar a subsequent conviction for the same offense. *Johnson v. State,* 541 S.W.2d 619, 621 (Tex.Cr.App. 1976). Accordingly, we hold that the trial court correctly overruled the defendant's motion to quash.

The defendant further raises various complaints regarding the in-court identification of the defendant by Ms. Escobedo and Ms. Sheldon. Primarily, the defendant contends that the in-court identification was tainted by an impermissibly suggestive pretrial identification procedure.

In *Brem v. State,* 571 S.W.2d 314, 320 (Tex.Cr.App.1978) the court held:

"Where the in-court identification is based upon observations by the witness other than the lineup identification and thus is of independent origin, then the in-court identification is admissible even though the lineup procedure may have been improper. *Thompson v. State,* 480 S.W.2d 624 (Tex.Cr.App.1972). Where the complaining witness' identification of the defendant is based upon an adequate opportunity to view the defendant at the time of the offense, then the identification is of independent origin. *Bermudez*

*v. State,* 533 S.W.2d 806 (Tex.Cr.App. 1976)." *Id.* at 320.

■ In the instant case, both Ms. Escobedo and Ms. Sheldon testified that at the time the defendant presented Marie Landez' credit card to them the lighting in the store was good, and that they had ample time to observe the defendant. The unlawful purchases were made around the noon hour, in the middle of the week, while very few people were shopping at the store. Ms. Escobedo especially remembered the defendant because he made several separate purchases. Ms. Sheldon remembered the defendant because the credit card he presented her had a woman's name on it. After she refused to accept the card, the defendant returned with a woman who signed the charge receipt. Thus, both women had adequate opportunities to observe the defendant at the time of the offense. Accordingly, we hold that the in-court identification of the defendant was of an independent origin and not the result of the pre-trial identification procedure which the defendant contends was impermissibly suggestive. *Demouchette v. State,* 591 S.W.2d 488, 491 (Tex.Cr.App.1979); *Brem v. State, supra* at 320.

The defendant also contends that the trial court erred by placing the burden on him to show a tainted identification at the hearing on his motion to suppress the in-court identification. In support of this contention, the defendant cites *Martinez v. State,* 437 S.W.2d 842, 848–849 (Tex.Cr.App.1969) wherein the court held:

> "It is recommended that in future trials before a jury, once the in-court identification of the accused is sought to be introduced and the court is apprised that the identification is questioned on the basis of a prior police station or lineup identification, then upon motion of the defense counsel a hearing should be held outside the presence of the jury. The issue of admissibility should be determined before such evidence is placed before the jury. Should the court, at such hearing, determine that such identification at the police station or elsewhere was violative of the Wade and Gilbert mandates or of due process, then the prosecution is precluded from offering any evidence of such identification before the jury. [footnote omitted]
>
> \* \* \* \* \* \*
>
> "In such hearings it must be remembered that the burden is upon the prosecution to establish by 'clear and convincing proof' *that the testimony is not the fruit of the earlier identification made in the absence of counsel or intelligent waiver of counsel.*" [emphasis added] *Id.* at 848–849.

In the instant case, there is no contention that there was a police lineup conducted in the absence of counsel for the defendant. Thus, *Martinez* is distinguishable from the instant case. Further, the trial court merely required the defendant to produce some evidence that an impermissibly suggestive pre-trial identification in fact occurred. The defendant was not required to show that the in-court identification was the fruit of the earlier identification.

The defendant also complains of the trial court's failure to file written findings of fact at the conclusion of the hearing on the motion to suppress. The trial court made oral findings which are supported by the evidence in the record. No request for written findings was made, and there was no objection to the court's failure to do so.

The Court of Criminal Appeals has repeatedly held that while the trial court should make written findings of fact at the conclusion of such a hearing, the failure to do so is not reversible error where there is sufficient evidence for the court to conclude that the in-court identification was the result of the witness' independent recollection of the defendant. *Garcia v. State,* 563 S.W.2d 925, 929 (Tex.Cr.App.1978); *Williams v. State,* 477 S.W.2d 885, 889 (Tex.Cr.App.1972); *Spencer v. State,* 466 S.W.2d 749, 752 (Tex.Cr.App.1971). As stated earlier in this opinion, there is sufficient evidence in the record from which the trial court could have concluded that the in-court identification of the defendant by Ms. Esco-

bedo and Ms. Sheldon was of independent origin.

Finally, the defendant contends that the trial court erred by not requiring the State to produce the portfolio of photographs shown Ms. Escobedo by the police detective. The record reflects that the court did order the State to turn over the photographs to the defendant but that the State's attorney was unable to locate the photographs. There is no evidence of a deliberate failure to preserve the portfolio.

In *Van Byrd v. State,* 605 S.W.2d 265, 270 (Tex.Cr.App.1980) the court held that where the in-court identification was of an origin independent of any pretrial identification, as in the instant case, the State's inability to produce a set of photographs does not constitute reversible error. We follow this holding.

The defendant challenges the sufficiency of the evidence to prove beyond a reasonable doubt that the Ma Marcella Landez who testified at the trial was the same person alleged to be the cardholder in the indictment. In deciding this issue, we must examine the evidence in the light most favorable to the State and determine whether *any* rational trier of fact could have found, beyond a reasonable doubt, that the Ma Marcella Landez who testified at the trial was the same Ma Marcella Landez named in the indictment as the cardholder. *See Griffin v. State,* 614 S.W.2d 155, 159 (Tex.Cr.App.1981).

Marcella Landez testified that unauthorized credit purchases were made with her Sears credit card. The defendant's sister testified that she took the credit card in question from the Marcella Landez who testified at the trial. Ms. Escobedo and Ms. Sheldon both testified that the unauthorized purchases were made by the defendant and his sister. We hold that this evidence is sufficient to prove that the Marcella Landez who testified at the trial was the cardholder named in the indictment.

The sufficiency of the evidence is also challenged on the ground that there is no evidence that the defendant used the credit card to obtain property *and services* as alleged in the indictment. There was ample evidence presented by the State to prove beyond a reasonable doubt that the defendant used the credit card in question with the intent to fraudulently obtain *property* from Ninfa Escobedo, a saleslady for Sears, Roebuck and Co. This alone is sufficient to authorize a conviction for credit card abuse under Section 32.31(b)(1)(A) of the Penal Code. Thus, although there is no evidence that the defendant used the credit card to obtain *services,* the evidence is nevertheless sufficient to sustain his conviction for credit card abuse. We fail to see how the use of "and services" in the indictment injured the defendant. *See Cain v. State,* 136 Tex.Cr.R. 275, 124 S.W.2d 991, 994 (Tex.Cr.App.1938); *Ross v. State,* 70 S.W. 543, 544 (Tex.Cr.App.1902). A similar contention was decided adversely to the defendant's position in *Love v. State,* 627 S.W.2d 457, 458 (Tex.App.—Houston [1st Dist.] 1981, no petition filed).

We have reviewed the record in its entirety and hold that the evidence adduced at the trial is factually sufficient to support the conviction. We have considered all of the grounds of error which have been brought forward by the defendant. None of the grounds present reversible error, and they are all overruled.

The judgment of the trial court is AFFIRMED.