Ronnie Ray SEYMOURE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 84 039 CR.

Court of Appeals of Texas,
Beaumont.

May 8, 1985.

Harold J. Laine, Jr., Laine & Stone, Beaumont, for appellant.

John R. DeWitt, Ass't Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appellant was indicted for theft of property owned by Clinton Pate with the intent to obtain and control the property and intentionally causing bodily injury to Pate by hitting him with a metal object.

By one enhancement paragraph it was alleged that Ronnie Ray Seymoure, prior to the commission of the primary offense, was finally convicted of the felony offense of aggravated robbery on May 18, 1978, using a deadly weapon. The theft from Pate happened on September 11, 1983. The jury found Seymoure guilty of the primary offense and also found the enhancement paragraph true, assessing punishment at 70 years.

Appellant bases his appeal on three errors: (1) that the State failed to adduce evidence as to the identity of the Appellant; (2) the evidence is insufficient as to the identity of the Appellant as being the same person who committed the offense charged; (3) the State failed to prove beyond a reasonable doubt that the Appellant committed the theft from Pate. The primary offense was a robbery of money from Pate, striking him on the head by using a metal object as a weapon.

The main thrust or gravamen of Appellant's appeal was that the victim, Pate, was unable to identify Appellant in the courtroom, resulting in the contention that the evidence was therefore insufficient to prove that the Appellant was the person who robbed Pate.

Alfred John Gillen, Jr. and Derold James were police officers with the Port Arthur Police Department. At about 5:00 o'clock in the morning they received a call from Sergeant Tyler that a possible robbery had occurred. The police went to a location at Seventh and Austin Streets in Port Arthur. They received a description of the suspect as being a black man, approximately six feet one inch tall, thin build, wearing black jeans and a pinkish-colored T-shirt with cut off sleeves. They, along with another officer, attempted to chase down the suspect. He temporarily eluded pursuit. The suspect was first seen running south on Austin Street. The suspect was definitely running. The suspect was perspiring. He was pursued to the 500 block of Seventh Street where the officers lost sight of him

but the officers had a good opportunity to see what the suspect was wearing. Then there was a string of evidence raising the issue that the next time the suspect was seen was under a car in a junkyard. The car was turned upside down. This junkyard was about one-half block from the place where the suspect had last been seen. The suspect was inside the overturned car and was being held by Officer James. The junkyard was dark. By use of a flashlight the crouched figure was observed. The crouched figure was ordered to come out. The suspect then came out and was wearing black pants and pinkish-colored T-shirt cut off at the sleeves. He was taken into custody and read his rights. This person was approximately six feet one or six feet two inches tall and of a thin build. This same suspect was identified in court by Officer Gillen.

The suspect found in the junkyard was idenified by a second officer as being the same person who was the defendant in court. This second officer was Derold James. James also identified the suspect as being six feet one inch in height, slender build, wearing a pink T-shirt with sleeves cut off over dark pants. James definitely identified Seymoure as the man he took into custody and as the defendant in open court.

The suspect had been transported immediately back to the scene of the offense. Pate, the complaining witness, was at the scene of the offense and recognized and identified the Appellant.

Another officer, George M. Woods, was assigned to investigate the robbery perpetrated on Pate. The claimant, Pate, was described as an elderly black man who was retired. Woods said Pate was a "very polite, timid person." During the course of Woods' investigation he talked with the Appellant, whom he identified in the courtroom, and also read to the Appellant his rights from a form being described as the standard Miranda warning.

The State's Exhibit No. 1 was admitted, being a plastic bag containing money taken by Seymoure from the complainant which was unable to be duplicated for the appellate record. Officer Gillen was recalled to the stand and affirmatively and unequivocally testified that, in Gillen's presence, Pate was asked, in the presence of Seymoure, if Seymoure was the person who robbed Pate. Gillen testified that he could hear what Pate said and what Pate said was in the presence of Appellant.

Pate testified that his assailant was tall, black and young and that his assailant hit him on the head with an iron pipe while demanding his money. Pate then "flagged down a policeman". Within a reasonably short time thereafter the policeman brought back a man and asked Pate "if it was the guy who robbed you" and Pate answered "Yes, sir." He was asked again what did he tell them. Pate said "Told them yes." When asked a third time, Pate testified "I told them that it was."

However, Pate was not able to finally identify the Appellant in the courtroom. Pate apparently could not see the Appellant in the courtroom. Pate had a little snap purse and had $1.50 mostly in change, which was taken. There is sufficient evidence to identify Appellant as the suspect who robbed Pate. Pate further testified that he was thrown down, he was hurt and he had pain.

A fair, reasonable and balanced analysis of the record raises the issue and shows that the Appellant made a flight in an effort to hide; that Pate's detailed and accurate description of his assailant and his clothing matched that of the suspect. The suspect, the Appellant, was discovered and arrested within a short time and at a near place and in the vicinity of the robbery. This record shows the offense and apprehension occurred at a time and place where there were few or probably no other persons on those streets having the same description, concerning appearance, clothing, build, age and physique. We perceive that the evidence here was mainly direct but partially circumstantial.

Applying the tests and criteria of *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim. App.1983); *Freeman v. State*, 654 S.W.2d

450 (Tex.Crim.App.1983); *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App.1983); *Wilson v. State*, 654 S.W.2d 465 (Tex.Crim. App.1983) as well as the more recent case of *Houston v. State*, 663 S.W.2d 455 (Tex. Crim.App.1984), we sanguinely hold that the evidence and testimony in this record support the conviction. *See also Ortega v. State*, 628 S.W.2d 539 (Tex.App.—Amarillo 1982, no pet.). We find the majority rule is that, when a victim identified his assailant very shortly after the time of the robbery or assault at the scene of the crime, such identification has been held to have cogent probative value and is not vitiated by a lack of in-court identification. *See and compare Williams v. State*, 565 S.W.2d 937 (Tex.Crim.App.1978) and *Navajar v. State*, 496 S.W.2d 61 (Tex.Crim.App.1973).

We overrule Appellant's grounds of error and affirm the judgment and sentence below.

AFFIRMED.