Patrick DeWayne LEWIS, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–87–304–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 12, 1988.

Frank M. Sheppard, Jr., Houston, for appellant.

John B. Holmes, Jr., Linda A. West, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

OPINION

MURPHY, Justice.

This is an appeal from a conviction for burglary of a motor vehicle. Appellant was tried before a jury and sentenced to seven years confinement in the Texas De-

partment of Corrections. Finding no cause to disturb the judgment, we affirm.

On November 17, 1986, in the early morning hours, Larry Hamilton, the complainant, was alerted by his mobile alarm that someone had disturbed his automobile. The complainant saw from the downstairs window of his apartment that the appellant had inserted his upper body inside Hamilton's vehicle by breaking through the window on the driver's side. Hamilton also observed that another man was apparently keeping watch and a late model car was parked nearby with its lights on. After the complainant phoned the police, he returned to the window and subsequently ran out the door to chase the burglars. The burglars immediately responded to Hamilton's appearance by running away.

Officer Breedlove responded to the burglary dispatch resulting from Hamilton's call and interviewed the complainant shortly after the offense occurred. Hamilton gave the officer a description of the person he had seen burglarizing his car. Upon completing the interview, Breedlove took Hamilton to a convenience store roughly five minutes from Hamilton's apartment where on the basis of a suspicious vehicle call two other officers were detaining four men. Once there, Hamilton was allowed to view the four men for identification purposes. According to Officer Breedlove, Hamilton exhibited no hesitation in identifying appellant as the offender he had seen only a short time before burglarize his car. In addition, Hamilton identified the man accompanying appellant and acting as lookout, as well as the automobile he had seen nearby.

By his first point of error appellant states that the trial court erred in receiving evidence of identification, over his objection, which was the result of a warrantless arrest made without probable cause. Appellant argues that he and the three individuals who were detained by the two officers were doing nothing unlawful at the time of their detention. The officers testified that prior to spotting the appellant and the three other men at the convenience store, they had driven around the apartment complex where the complainant lived, investigating a suspicious vehicle call. After driving through the complex the officers saw the vehicle described over the dispatch as a blue four-door Impala with four black individuals, at a convenience store located within approximately five minutes driving distance from the complex. Appellant complains that at that time the officers illegally detained him for approximately twenty mintues before they received the information concerning the burglary. Consequently, according to appellant, the trial court should have granted his motion to suppress identification testimony because it resulted from an illegal arrest. This Court has already addressed a similar issue in *Whithurst v. State*, 690 S.W.2d 110, 111 (Tex.App.—Houston [14th Dist.] 1985, no pet.). In *Whithurst*, we stated, "[e]ven if the appellant were under unlawful arrest at the time the witness identified him, the illegal arrest could not have tainted the witness's in-court identification. A defendant's face cannot be a suppressible fruit of an illegal arrest." *Id.* at 111. Furthermore, we find no merit in appellant's objection to evidence concerning the identification that occurred after the alleged illegal detention of appellant. Appellant's counsel helped develop the officer's testimony as to the identification the complainant made while appellant was detained. It was only after passing the witness and allowing the state to continue questioning on re-direct, that counsel objected to its introduction by arguing his motion to suppress. Appellant's counsel was thus partly responsible for developing the same evidence which he subsequently staged an untimely objection to. Appellant's first point is overruled.

In his second point appellant complains of trial court error "in receiving the 'in-court identification' evidenced [sic] over appellant's objection." Here, appellant cites *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), for authority in arguing that the one-on-one confrontation conducted by the police officers at the scene of the arrest was overly suggestive and conducive to irreparable mistaken identification.

It is well established that a one man show up without more does not violate due process. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401, (1972); *Garza v. State,* 633 S.W.2d 508, 512 (Tex.Crim.App. 1981) (op. on reh'g) (1982). Because of the potentially suggestive effects of one on one or show up identifications arranged by the police, the Court in *Stovall* expressed its concern against the practice. However, the *Stovall* Court held that a claimed violation of due process in the conduct of a confrontation depends upon the totality of the circumstances surrounding it. The test, used in determining whether a single showup identification violates due process, inquires whether the confrontation was: (1) unnecessarily suggestive, and (2) conducive to the irreparable misidentification of the defendant. *Stovall v. Denno,* 388 U.S. at 302, 87 S.Ct. at 1972. We are aware while addressing the first part of this inquiry that by its very nature a one on one confrontation entails many suggestive elements. The appellant is often handcuffed and in police custody when the one on one showup identification takes place. Therefore, in determining the first prong of the test we ask whether the confrontation was so unnecessarily suggestive as to deny due process to the accused. *Ortega v. State,* 628 S.W.2d 539, 541 (Tex.App.—Amarillo 1982, no pet.).

The appellant argues that the evidence indicates that the one-on-one confrontation was so suggestive and conducive to irreparable mistaken identification that he was denied due process of law. Here, appellant points to the complainant's testimony of what he saw when Officer Breedlove took him to the convenience store for identification purposes. Hamilton testified that he saw two or three police cars around a light blue car and about five or six police officers. Leaning up against the light blue vehicle were the four individuals from whom Hamilton identified the appellant. The complainant also stated that the vehicle which the individuals were leaning against appeared "very, very, very similar" to the car he saw outside his apartment. We find that under the totality of the circumstances the police conduct in this matter was not so unnecessarily suggestive as to deny appellant due process. The advantage of allowing the witnesses to view the appellant as soon as possible after the crime is committed is obvious. The witness is allowed to test his recollection while his memory is still fresh and accurate and as a result, the confirmation or denial of identification allows the speedy release of innocent suspects. *Garza v. State,* 633 S.W.2d at 512. In this case, the appellant was not handcuffed and was identified while standing with three other young black males. Furthermore, nothing in the record suggests the officers prodded or made unnecessary remarks to the complainant before, during or after the identification.

We now address the second prong of the test which is whether the confrontation was so conducive to irreparable mistaken identification, that the appellant was denied due process of law. In making this determination, we are guided by five factors: (1) the witness' opportunity to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation, *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, (1977). Here, Hamilton testified that his car was parked under a flood light so that when he witnessed the appellant during the commission of the crime the scene was "illuminated quite a bit." Additionally he estimated that the window from which he saw the appellant was roughly twenty feet away from the appellant. Hamilton stated that he was able to get a clear view of the appellant's face, profile and clothing. Hamilton's testimony indicated that he did pay close attention to the appellant when he viewed him during the commission of the offense. The accuracy of the prior description given to Breedlove of the appellant underscores Hamilton's apparent clear attention. He described the appellant as a slender young black male with short cut hair and a round face, wearing tennis shoes, brown or rusty colored pants and a

white t-shirt. In addition, Hamilton expressed no hesitation or uncertainty when identifying appellant and the identification took place approximately twenty minutes after Hamilton had witnessed the crime. Under the totality of the circumstances we hold that the confrontation was not so suggestive or conducive to irreparable mistaken identification as to deny appellant due process of law. Appellant's second point is overruled.

■ Appellant's third point of error states: "[t]he trial court erred in failing to quash the indictment because it failed to contain necessary explanatory averments." The appellant's argument is that since "vehicle" does not necessarily refer to an automobile as defined by the Texas Penal Code, he did not have sufficient notice as to the crime he was accused of committing. The indictment filed read that on November 17, 1986, Patrick DeWayne Lewis did:

> With intent to commit theft, break into and enter a vehicle owned by Larry Hamilton, a person having greater right to possession of the vehicle than the Defendant and hereafter styled the complainant, without the effective consent of the Complainant, namely, without any consent of any kind.

Contrary to the appellant's assertions in his brief there was evidence in the record of the make and model of the car burglarized from the complainant's testimony. In fact, at the pre-trial hearing, which occurred the same day appellant filed his motion to quash, the complainant testified that the vehicle which was burglarized was his Datsun 280Z.

The proper analysis for considering an issue concerning a motion to quash was set forth in *Adams v. State*, 707 S.W.2d 900 (Tex.Crim.App.1986):

> The important question is whether a defendant had notice adequate to prepare his defense. The first step in answering this question is to decide whether the charging instrument failed to convey some requisite item of "notice". If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the context of the case, this had an impact on the defendant's ability

to prepare a defense, and, finally, how great an impact.

On remand from the Court of Criminal Appeals, the court in *Walters v. State*, 715 S.W.2d 63 (Tex.App.—Dallas 1986, no pet.), reconsidered whether the allegation of burglary of a "vehicle," without more, in an indictment, fails to adequately describe a vehicle. *Upon* application of the Adams three-step analysis, that court decided that the indictment failed to give the appellant adequate notice of the charges against him because the indictment did not adequately describe the burglarized vehicle. However, the *Walters* court held that in the context of the case, the notice defect in the indictment did *not* have an impact on appellant's ability to prepare a defense. In distinguishing *Bonner v. State*, 640 S.W.2d 601 (Tex.Crim.App.1982), the court in *Walters* pointed out that the state's evidence in their case concerned only one box car, whereas in *Bonner* the state's allegations and evidence concerned three different vehicles. In the case at bar, again, only one vehicle was involved. Moreover, the record did not reflect in this case that the appellant was put at a disadvantage by the wording in the indictment, particularly after the complainant testified as to the make and model at the motion hearing prior to trial. Consequently, we hold that any notice defect existing in the indictment did not have an impact on appellant's ability to prepare a defense. Appellant's last point is overruled.

■ Finally, in addition to the brief that counsel filed, Lewis has filed a pro se brief with this court. No right to hybrid representation exists in Texas. *Rudd v. State*, 616 S.W.2d 623, 625 (Tex.Crim.App.1981); *Normand v. State*, 686 S.W.2d 275, 279 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). Appellant's pro se brief presents nothing for review. We have, however, examined the contentions in the pro se brief and find no error that we should consider in the interest of justice. The judgment is affirmed.