Affirmed and Memorandum Opinion filed February 9, 2006









Affirmed
and Memorandum Opinion filed February 9, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00216-CR

____________

 

BRIAN KEVIN LEE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 995,717

 



 

M E M O R A N D U M   O P I N I O N

Appellant Brian Kevin Lee was found guilty
by a jury of aggravated robbery with a deadly weapon, and he was sentenced by
the trial court to twenty-five years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  In points of error one through six, appellant
contends the trial court erred in failing to suppress the out-of-court and
in-court identifications of the complainant and three other witnesses in
violation of his due process rights.  In
points of error seven and eight, appellant contends the evidence is legally and
factually insufficient to corroborate the testimony of an accomplice because
the only other evidence of guilt is the allegedly tainted identifications.  We affirm.








Factual Background

On July 28, 2004, Casheen Haynes, Lauren
Hamilton, Britania Lubbing and Jason Brousard finished eating at a Houston IHOP
restaurant at approximately 1:00 a.m.  As
they were leaving, four men in a station wagon drove by the group in the
restaurant=s parking lot, and one of the men said
something to them.  The station wagon
then parked near them as the group was standing by Hamilton=s truck.  Two men got out of the station wagon and
walked towards the group.  The men were
later identified as Jerry Williams and appellant.  Williams carried a shotgun and appellant
carried a handgun.  Appellant demanded
that Haynes give him his money, and when Haynes hesitated, appellant hit Haynes
two or three times in the head with his gun. 
Haynes gave appellant his money while Williams robbed the other members
of the group.  As appellant and Williams
walked back to the station wagon, Williams fired two shots toward the group;
one shot hit Hamilton=s truck.

After the station wagon pulled away,
Haynes called the police on his cell phone. 
He provided a description of the men, Brousard provided the make and
model of the car, and Hamilton gave the license plate number.  The police arrived at the IHOP approximately
fifteen minutes later and obtained more information from the group.  After Haynes left the IHOP, the police called
him and asked him if he could come and identify some suspects they believed
they had found.  Haynes drove to the
apartment complex where the station wagon was located and four men who were
standing nearby, one of whom was appellant, had been detained.[1]  Hamilton and Lubbing were also brought to the
apartment complex by police officers to make identifications.  

Haynes, Hamilton, and Lubbing were each
escorted to separate police cars.  Each
of the four suspects was then brought in front of the police cars one at a
time.  All three witnesses identified
appellant and Williams as the men who had robbed them.  All three also identified appellant at
trial.  








Before trial, appellant filed a motion to
suppress the in-court identifications because of an impermissibly suggestive
pretrial identification procedure. 
Haynes, Hamilton, and Lubbing testified at the suppression hearing.  After the hearing, the trial court found
that, based on the totality of the circumstances, the pretrial and subsequent
in-court identifications were not suggestive, and he allowed the identifications
to be introduced at trial.[2]


Analysis of Appellant=s Points of Error

I.        Points
of Error One Through Six:  The Out-of
Court and In-Court Identifications

In his first through sixth points of
error, appellant contends that the trial court committed reversible error by
denying his motion to suppress the out-of-court and in-court identifications by
the complainant, Casheen Haynes, Lauren Hamilton, and Britania Lubbing.  Appellant contends that the procedure used
during the out-of-court identifications was highly suggestive in violation of
his federal due process rights because the police told Haynes, Hamilton, and
Lubbing that they Abelieved that they had the suspects,@ or because the
three witnesses could infer this from the amount of time that passed between
the offense and the identifications. 
Appellant further contends that the three witnesses= in-court
identifications also violated his federal due process rights because they were
tainted by the allegedly unduly suggestive pretrial identification procedure.

A.      The
Applicable Law








A pretrial identification procedure may be so unnecessarily
suggestive and conducive to mistaken identification that to use that
identification would deny the accused due process of law.  Webb v. State, 760 S.W.2d 263, 269
(Tex. Crim. App. 1988) (citing Stovall v. Denno, 388 U.S. 293, 301B02 (1967)).  Nevertheless, even if the pretrial procedure
is impermissibly suggestive, the subsequent identification testimony will be
deemed reliable if the totality of the circumstances reveals no substantial
likelihood of misidentification.  A[R]eliability [is] the linchpin in
determining the admissibility of identification testimony.@ 
Id. (citing Manson v. Brathwaite, 432 U.S. 98, 113B14 (1977)).  

We therefore perform a two‑step analysis to determine
whether the trial court erroneously admitted in‑court identification
testimony, inquiring: (1) whether the pretrial procedure was impermissibly
suggestive; and (2) if so, whether the suggestive pretrial procedure gave rise
to a very substantial likelihood of irreparable misidentification at
trial.  Delk v. State, 855 S.W.2d
700, 706 (Tex. Crim. App. 1993).  It is
appellant=s burden to prove the in‑court
identification is unreliable by proving both of these elements by clear and
convincing evidence.  See id.  If the indicia of reliability outweigh
the influence of an impermissibly suggestive pretrial identification, the
identification testimony is admissible. Id.  The admissibility of an identification is a
mixed question of law and fact that we review de novo.  See Loserth v. State, 963 S.W.2d 770,
773 (Tex. Crim. App. 1998).

B.      Was
the Pretrial Procedure Impermissibly Suggestive?

While an on-scene confrontation procedure
has some degree of suggestiveness, in many situations its use is
necessary.  Garza v. State, 633
S.W.2d 508, 512 (Tex. Crim. App. 1982) (op. on reh=g).  By viewing the alleged perpetrator of the
offense immediately after the commission of the offense, the witness is allowed
to test his recollection while his memory is still fresh and accurate.  Id. 
The quick confirmation or denial of identification also expedites the
release of innocent suspects, and enables the police to release innocent
suspects and continue their search for the criminal while he is still within
the area and before the criminal can substantially alter his looks and dispose
of evidence of the crime.  Id.  Finally, any possible prejudice resulting
from such a confrontation can be exposed by rigorous cross-examination of the
witness.  Id.








Here, the on-scene procedure used could be
considered necessary.  First, the witnesses
had given the police a description of appellant=s appearance and
the station wagon, as well as the station wagon=s license plate
number.  The on-scene identification,
which took place within two hours of the crime, enabled the witnesses= memories to be
tested while they were fresh and accurate. 
Second, while the police originally detained four possible suspects,
only two were identified by the witnesses. 
Finally, all three witnesses were cross-examined at the suppression
hearing and at trial, which allowed appellant to expose any possible prejudice
resulting from the confrontation.  

Appellant contends that, because the
police had him in custody at the time he was identified and thereby suggested
that he was a suspect, the witnesses inferred his guilt.  However, a suspect shown in custody at the
time of the on-scene identification does not necessarily indicate an
impermissible identification.  See
Powell v. State, 837 S.W.2d 809, 811B12 (Tex. App.CHouston [1st
Dist.] 1992, pet. ref=d) (holding on-scene identification of
appellant shortly after robbery when appellant was in custody as a suspect and
handcuffed did not result in irreparable misidentification under totality of
circumstances); Lewis v. State, 751 S.W.2d 895, 897B98 (Tex. App.CHouston [14th
Dist.] 1988, no pet.) (holding on-scene identification by complainant of
appellant and three others detained shortly after burglary of complainant=s car was not so
unnecessarily suggestive as to deny appellant due process).  

Here, the witnesses were shown the
suspects one at a time, and all three positively identified appellant and
Williams as the robbers.  The
identification procedure took place approximately two hours after the
robbery.  Moreover, appellant was found
in the immediate vicinity of the station wagon displaying the identified
license plate.  See Louis v.
State, 825 S.W.2d 752, 756 (Tex. App.CHouston [14th
Dist.] 1992, pet. ref=d) (on-scene identification was not
impermissibly suggestive when confrontation occurred an hour after offense,
defendant was immediately identified, and any possible prejudice resulting from
the confrontation could have been exposed from the cross-examination of the
witnesses).

Therefore, under these circumstances, we
do not find the on-scene identification procedure to be unnecessarily
suggestive.

 








C.      Did
the Allegedly Suggestive Pretrial Procedure Give Rise to a Very Substantial
Likelihood of Irreparable Misidentification at Trial?   


Even if the on-scene identification of appellant was
impermissibly suggestive, appellant must still show that the suggestive
procedure gave rise to a very substantial likelihood of irreparable
misidentification at trial.  See Delk,
855 S.W.2d at 706; Garza, 633 S.W.2d at 512B13. 
Turning to this second step in the analysis, we look to whether the
subsequent identification testimony at trial is reliable under the totality of
the circumstances.  See Webb, 760
S.W.2d at 269.  

In assessing reliability under the totality of the circumstances,
the following five non‑exclusive factors should be weighed against the
corrupting effect of any suggestive identification procedure: (1) the
opportunity of the witness to view the criminal at the time of the crime; (2)
the witness=s degree of attention; (3) the
accuracy of the witness=s prior description of the criminal; (4) the level of
certainty demonstrated by the witness at the confrontation, and (5) the length
of time between the crime and the confrontation.  Ibarra v. State, 11 S.W.3d 189, 195 (Tex.
Crim. App. 1999) (citing Neil v. Biggers, 409 U.S. 188, 199
(1972)).  These factors and other
relevant factors that are issues of historical fact will be considered deferentially
in the light most favorable to the trial court=s ruling.  See id.  The factors viewed in this light are then
weighed de novo against the corrupting effect of the suggestive pretrial
identification procedure.  Id. at
195B96 (citing Loserth v. State,
963 S.W.2d 770, 773B74 (Tex. Crim. App. 1998)).








Here, Haynes testified that he first
observed four men in the station wagon as it drove by the group in the
restaurant parking lot.  Haynes then
watched the station wagon park in a nearby parking space, and saw appellant and
Williams walk towards him from the station wagon.  At this point, Haynes realized that the men
were carrying guns.  Appellant then
demanded Haynes=s money and hit Haynes with his gun.  Haynes testified that he was Afocused on the
person with the gun@ and got a good look at him.  Haynes also testified that the parking lot
was well lit and that appellant was not wearing a disguise.  Haynes then watched appellant walk away and saw
Williams fire at the group with a shotgun. 
When he arrived at the apartment complex for the identification
procedure, the police separated him from the other witnesses, and he was not
allowed to talk to them.  He testified
that the officers never suggested to him who he should pick and that he was Acertain@ of his
identification of appellant and Williams. 
Approximately two hours passed between the time of the robbery and the
identification. 

Lauren Hamilton testified that she first
saw appellant when he and Williams walked toward the group carrying guns.  Appellant was standing approximately four
feet away from her when she gave her purse to Williams.  When appellant began to hit Haynes with the
gun, he was within arms= reach of her and she got a good look at
him.  She watched appellant hit Haynes
with the gun for approximately ten to fifteen seconds.  She testified that the lighting was Aactually very
bright@ in the restaurant
parking lot and was adequate for her to get a good look at appellant.  When Williams fired the gun at Hamilton=s truck, she
ducked behind the truck=s door. 
As the station wagon drove away, she was able to write down the license
plate number.  

Britania Lubbing first noticed appellant
and Williams when they came within Atouching distance@ demanding that
the group give them their belongings. 
She saw that one was armed with a shotgun and one was armed with a
handgun.  She testified that she got a
good look at appellant and watched him as he was hitting Haynes.  She also testified that the parking lot was
very well lit.  

The police brought Hamilton and Lubbing to
the apartment complex for identification. 
They testified that the police told them that they had found the car
with the license plate number and wanted to see if Hamilton and Lubbing could
identify any of the suspects they had detained. 
When Hamilton and Lubbing arrived at the apartment complex, the police
separated them and showed each of the four suspects, one at a time.  Both women were able to identify appellant
and Williams.  








Reviewing the totality of the
circumstances, we find that each witnesses= identification
was sufficiently reliable to be admissible. 
Therefore, we overrule appellant=s points of error
one through six.

II.       Corroboration
of Accomplice Witness Testimony

In his seventh and eighth points of error,
appellant contends the State failed to present legally or factually sufficient
evidence to corroborate the testimony of the accomplice, Jerry Williams.  Specifically, appellant contends that the
identification testimony of Haynes, Hamilton, and Lubbing cannot be used to
corroborate William=s testimony because it was Afatally tainted@ and Asimply not
credible enough.@ 
Appellant also contends that no other corroborating evidence exists.[3]


A.      The
Accomplice Witness Rule and the Applicable Standard of Review

Article 38.14 of the Texas Code of
Criminal Procedure states that A[a] conviction
cannot be had upon the testimony of an accomplice unless corroborated by other
evidence tending to connect the defendant with the offense committed.@ Tex. Code Crim. Proc. art. 38.14.  The corroboration is not sufficient if it
merely shows the commission of the offense. 
Id.  The accomplice witness
rule is a legislative creation not required by common law or federal
constitutional law.  Vasquez v. State,
56 S.W.3d 46, 48 (Tex. Crim. App. 2001). 
The rule reflects a legislative determination that accomplice testimony
should be viewed with a measure of caution. 
Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998).








The accomplice witness rule imposes a
sufficiency review that would not otherwise be conducted by appellate
courts.  Taylor v. State, 10
S.W.3d 673, 684 (Tex. Crim. App. 2000). 
In conducting a sufficiency review under the accomplice witness rule,
the reviewing court must eliminate the accomplice testimony from consideration
and then examine the remaining portions of the record to ascertain if there is
any evidence that tends to connect the accused with the commission of the
crime.  Solomon v. State, 49
S.W.3d 356, 361 (Tex. Crim. App. 2001); Hernandez v. State, 939 S.W.2d
173, 176 (Tex. Crim. App. 1997). ATendency to
connect@ rather than
rational sufficiency is the standard: the corroborating evidence need not be
sufficient by itself to establish guilt beyond a reasonable doubt. Solomon,
49 S.W.3d at 361; Cathey v. State, 992 S.W.2d 460, 462B63 (Tex. Crim.
App. 1999).  Rather, if the combined
weight of the non‑accomplice evidence tends to connect the defendant to
the offense, the requirement of Article 38.14 has been fulfilled.  Cathey, 922 S.W.2d at 462.[4]


All the facts and circumstances in the
case may be considered when determining whether the accomplice testimony was
properly corroborated.  Reed v. State,
744 S.W.2d 112, 126 (Tex. Crim. App. 1988). 
Even apparently insignificant evidence of incriminating circumstances
may sometimes afford satisfactory evidence of corroboration.  Trevino v. State, 991 S.W.2d 849, 852
(Tex. Crim. App. 1999).

B.      Application
of the Law to the Facts








After eliminating the testimony of Jerry
Williams, we find numerous facts and circumstances tending to connect appellant
with the crime.  We have already
determined that the identification testimony of Haynes, Hamilton, and Lubbing
was admissible, and each of these witnesses testified that appellant and
Williams approached them carrying weapons and demanding their belongings and
appellant struck Haynes with a gun.  In
addition, while still at the restaurant parking lot, Haynes and the others in
the group provided descriptions of the individuals who robbed them and the
station wagon they used to flee the scene. 
Hamilton provided the license plate number of the station wagon, and
appellant was found near this vehicle in the apartment complex where the
vehicle was registered, along with Williams and the other suspects.  One of the suspects present with appellant
was found with Haynes=s stolen cell phone in his pocket, and the
shotgun and handgun used in the crime were found inside the apartment unit near
where appellant was arrested.  

Under the accomplice witness rule, it is
not necessary that the corroborating evidence directly connect the defendant to
the crime or that it be sufficient by itself to establish guilt; the State
needs only to show that other evidence tends to connect the defendant to the
offense  Solomon, 49 S.W.3d at
361.  We find that the combined weight of
the non-accomplice evidence tends to connect appellant to the offense.  See id.  Appellant=s own testimony is
the only contradicting evidence, and his credibility, like that of the State=s witnesses, was a
matter for the jury to decide.  See
Wesbrook v. State, 29 S.W.3d 103, 111B12 (Tex. Crim. App.
2000) (discussing appellate review of jury=s resolution of
weight and credibility of witness testimony under legal and factual sufficiency
standards).  We therefore overrule
appellants points of error seven and eight.

Conclusion

The trial court=s judgment is
affirmed.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed February 9, 2006.

Panel
consists of Justices Fowler, Edelman, and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  When the first
police officer arrived at the apartment complex where the station wagon was
found, he saw three men standing near the station wagon.  A fourth man was found a little further away
in front of his apartment.  All four men
acknowledged knowing each other.





[2]  Among the
circumstances the trial court cited were the witnesses= opportunity to witness the event, their level of
certainty, and the length of time that had passed between the offense and the
subsequent identification.





[3]  For example,
appellant suggests the State could have, but did not, examine the handgun
appellant allegedly used for fingerprints, ask either appellant or Williams to
identify the weapons that were recovered even though they were introduced into
evidence, or test the shotgun to confirm it had been fired. 





[4]  For this reason, we decline
appellant=s request that we apply a legal and
factual sufficiency review to his complaint that no evidence corroborates the
accomplice=s testimony other than the
allegedly tainted identification testimony of the complainant and two
witnesses.  See Cathey, 992 S.W.2d at 462B63.