Affirmed and Memorandum Opinion filed September 13, 2007








Affirmed and Memorandum Opinion filed September 13, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01091-CR

____________

 

RODNEY JAMES HARRIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 14

Harris County, Texas

Trial Court Cause No. 1410959

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant Rodney James Harris of burglary
of a motor vehicle, and the trial court assessed punishment at one year=s confinement.  In
three issues, appellant complains that the evidence is legally and factually
insufficient to support his conviction and that the trial court erred in
admitting an eyewitness=s in-court identification.  We affirm.








I.  Factual and Procedural Background

Around 8:00 p.m. on October 19, 2006, Matthew Tanner went
to his friend Toby Melton=s house for band practice and parked his
truck in the driveway.  George Kienast, who lived across the street from
Melton, testified that he went outside the garage door of his house around
11:00 p.m. to smoke a cigarette and observed an interior light on in Tanner=s truck.  Kienast
saw an individual inside the truckCwho was not Tanner
and who he did not recognizeCunplugging items, taking them out of the
truck, and placing them on the ground near the rear passenger-side tire. 
Kienast, who stood about thirty yards away, described the individual as an
approximately six-foot-tall African American male with a large build and
wearing a red t‑shirt and blue windbreaker pants.  Kienast, however,
could not see the individual=s face.  Kienast called out to the
individual and asked him what he was doing.  Rather than responding, Kienast
stated that the individual began speaking as though someone else were inside
the truck, but Kienast could tell no one else was inside.  Kienast stated that
the individual then got out of the truck, picked up some of the items he had
taken from the truck, and began walking across Melton=s yard.  Kienast
again asked the individual what he was doing, and he said he was installing
speakers in the truck.  When Kienast asked the individual why he was walking
away from the truck rather than going inside Melton=s house, he became
agitated and began cursing and yelling at Kienast.  Before the individual
reached the nearest street corner, Kienast testified that both streetlights and
a neighbor=s porch light illuminated Kienast=s view, and he
could now see that the man Awas a big, big guy.@  Kienast also
noted that nothing distracted his attention from observing the individual=s actions, as it
was late at night and nothing was going on in the neighborhood.    








About two minutes later, when the individual had turned the
corner, Kienast knocked on Melton=s door and told
Melton and Tanner he had seen a man rummaging through and taking items out of
Tanner=s truck.  Tanner
and Melton checked the truck, and Tanner confirmed that his interior light was
on and his stereo amplifiers, the face of his CD player, and his CD case were
missing.  Melton and Tanner thereafter set out in Tanner=s truck to find
the individual, and Kienast called the police.  After a few minutes, Melton and
Tanner encountered an individual standing on the side of a mini-mall in a
business park who said something to them, and Tanner stopped the truck to talk
with the individual.  The individual, who Melton described as an African
American male wearing dark blue or black jogging-style pants and no shirt and
who both Melton and Tanner identified in court as appellant, asked if the men
were looking for something, and they informed him a neighbor had witnessed
someone breaking into Tanner=s truck.  Tanner testified that when he
asked appellant if he had seen anyone in a red shirt running with stereo
equipment, appellant responded that he had bought stereo equipment from a man
fitting that description named Marcus about thirty minutes earlier in the
evening and brought it to his apartment.  Tanner described the amplifiers, and
appellant confirmed that those were the exact items he had purchased from
Marcus.  Appellant also handed Tanner a receipt purportedly for the sale of the
items, but, according to Tanner, the receipt was for a type of wire and
contained none of the items missing from his truck.








At this point, Deputy Alvin Antoine of the Harris County
Constable=s Office, who had previously responded to Kienast=s suspicious
person call, arrived at the scene.  Deputy Antoine testified that Kienast had
informed him of the events, described the perpetrator as a black male wearing a
red shirt and black to dark-colored pants, and described the direction in which
the perpetrator had gone.   Less than two to three minutes after talking with
Kienast, Deputy Antoine located Tanner, Melton, and appellant.  Deputy Antoine
stated that appellant, who he described as wearing black-colored exercise
sweatpants but no shirt, volunteered that someone he knew tried to sell him
stereo equipment.  In response to Deputy Antoine=s questioning
about the sale, appellant repeatedly interrupted Antoine and stated that he
wanted to leave and get a beer, which Antoine described as Adeceptive.@  As Deputy
Antoine interrogated appellant, Tanner testified that he pulled his truck,
which was parked in the street, into a nearby driveway, and his headlights
revealed that his amplifiers and his CD case were laying by a wheelchair ramp,
covered by a red t-shirt.  After verifying that the items were in fact those
missing from his truck, Tanner immediately informed Deputy Antoine.  In
describing the placement of the items, Deputy Antoine stated that it Alooked like
someone had stashed them there trying to get rid of them in a hurry.@  Deputy Antoine
subsequently detained appellant.








Kienast testified that he went to the scene of appellant=s detention for an
identification, and, when he arrived, an individual was sitting in the back of
a patrol car.  The individual got out of the vehicle handcuffed, and a backup
deputy placed a spotlight on him.  Kienast testified that the individual was a
six-foot black male with a large build wearing the same blue windbreaker pants
as he had seen on the man breaking into Tanner=s truck, but the
man was now shirtless.  Deputy Antoine asked Kienast if he could identify the
individual, and Kienast explained he could not identify his face, which Kienast
had not seen, but could identify him by voice.  Deputy Antoine instructed the man
to say his name, which he did in a soft voice.  Kienast then requested that the
man say it loudly because Kienast had heard the perpetrator yell.  When the
individual yelled his name, Kienast identified his voice as that of the man who
yelled at Kienast earlier and who Kienast had seen taking items out of Tanner=s car.  Kienast
explained that, based on the man=s race, his build,
his blue windbreaker pants, and his voice, he was able to identify the man
standing before him to Deputy Antoine as the man who he saw break into Tanner=s car and who had
yelled at him.            At a motion in limine hearing outside the presence of
the jury to determine the admissibility of Kienast=s anticipated
in-court identification of appellant as the man he identified at the scene,
Kienast told the trial court that about ten or fifteen minutes elapsed between
the time Kienast witnessed the incident and when he made the on-scene
identification.  He also stated that he was one hundred percent sure of his
identification at the scene.  Kienast admitted to appellant=s counsel,
however, that his in-court identification would be based on his recognition of
appellant=s face as that of the man he identified at the scene. 
After overruling appellant=s motion, Kienast testified before the
jury that the man he identified at the scene was appellant.  The jury
subsequently convicted appellant of burglary of a motor vehicle.  

II.  Admissibility of In-Court Identification








In issue one, appellant contends the trial court erred in
admitting Kienast=s in-court identification of appellant as
the perpetrator because it was based on an impermissibly suggestive Ashow-up@ identification
procedure[1]
at the scene, which thus gave rise to a substantial likelihood of
misidentification at trial.  The admissibility of an identification is a mixed
question of law and fact that we review de novo.  See Brown v. State, 29
S.W.3d 251, 254 (Tex. App.CHouston [14th Dist.] 2000, no pet.)
(citing Loserth v. State, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998)). 
We conduct a two‑step analysis in determining whether the trial court
erroneously admitted in‑court identification testimony by evaluating  (1)
whether the pretrial procedure was impermissibly suggestive and, (2) if so, whether
the suggestive pretrial procedure gave rise to a very substantial likelihood of
irreparable misidentification at trial.  See Delk v. State, 855 S.W.2d
700, 706 (Tex. Crim. App. 1993).  A claimed violation of due process in the
conduct of an identification confrontation depends on the totality of
circumstances surrounding it.  Garza v. State, 633 S.W.2d 508, 512 (Tex.
Crim. App. 1982).  When determining whether an identification gives rise to a
very substantial likelihood of misidentification, a reviewing court must
consider the following non‑exclusive factors:  (1) the witness=s opportunity to
view the criminal act, (2) the witness=s degree of
attention, (3) the accuracy of the description of the suspect, (4) the level of
certainty at the time of confrontation, and (5) the time between the crime and
confrontation.  Barley v. State, 906 S.W.2d 27, 34B35 (Tex. Crim.
App. 1995) (citing Neil v. Biggers, 409 U.S. 188, 198 (1972)).  Biggers
factors constitute issues of historical fact, which a court should view
deferentially in a light favorable to the trial court=s ruling. 
Loserth v. State, 963 S.W.2d 770, 773B74 (Tex. Crim.
App. 1998).  The court then should weigh these factors de novo against the
corrupting effect of the suggestive pretrial procedure. Id.

We conclude that, even if the show-up procedure was impermissibly
suggestive, such procedure did not give rise to a substantial likelihood of
irreparable misidentification at trial under the Biggers factors. 
First, Kienast had ample opportunity to see and hear the perpetrator.  He
testified that he observed the perpetrator taking items out of Tanner=s car while
standing directly across the street about thirty yards away and that the truck=s interior light
aided his viewpoint.  Moreover, both streetlights and a neighbor=s porch light
allowed Kienast to better view the perpetrator=s physical
characteristics as he left the scene of the offense.  That Kienast failed to
see the perpetrator=s face at the time of the offense goes
only to the weight of his identification, not its admissibility.  See Garza,
633 S.W.2d at 513.  Further, because he heard the perpetrator yell at him,
Kienast specifically requested that the suspect yell his name; upon hearing the
suspect yell, Kienast immediately identified the suspect=s voice as that of
the perpetrator=s.  See McInturf v. State,
544 S.W.2d 417, 419 (Tex. Crim. App. 1976) (holding that voice identification
constitutes direct evidence); Ward v. State, 505 S.W.2d 832, 834B35 (Tex. Crim.
App. 1974) (upholding in-court identification where, at pretrial identification
lineup, after victim heard appellant=s voice, she Abroke down and
started crying because she stated that she knew that was the man who raped her@); Johnson v.
State, No. 14‑04‑00979‑CR, 2005 WL 3489702, at *7 (Tex.
App.CHouston [14th
Dist.] Dec. 22, 2005, no pet.) (not designated for publication) (holding that
eyewitness had ample opportunity to observe burglar visually and aurally inside
her house where witness saw person hunched on her floor and heard him speaking
in mumbled speech, and, although person covered his face, eyewitness had
several minutes to observe his clothing, race, and body type at close range).








Second, the evidence shows Kienast was attentive throughout
his observation of the offense.  He testified that nothing distracted him
because it was late at night and nothing else was going on in the
neighborhood.  Moreover, Kienast asked the perpetrator a question, elicited a
response, and alerted Melton and Tanner of the crime shortly after the
perpetrator left the scene, which demonstrate that Kienast more than passively
observed the offense.  See Johnson, 2005 WL 3489702, at *7 (holding that
eyewitness victim was attentive during burglary where she poked burglar, asked
him question, and elicited response before he escaped).  Third, Kienast
consistently described the perpetrator as a six-foot tall African American male
with a large build and wearing a red shirt and blue windbreaker-type pants,
which largely matched the description of the suspect given by Melton and Deputy
Antoine.  Fourth, Kienast testified that he was one hundred percent certain of
his identification at the scene.  See Brown v. State, No. 01‑03‑00098‑CR,
2004 WL 1282294, at *2 (Tex. App.CHouston [1st
Dist.] June 10, 2004, pet. ref=d) (not designated for publication)
(upholding court=s admission of show-up identification
where eyewitness stated she was Aone hundred
percent positive@ of identification).  Fifth, Kienast
testified that he identified appellant only ten or fifteen minutes after the
offense.  See Lewis v. State, 751 S.W.2d 895, 897 (Tex. App.CHouston [14th
Dist.] 1988, no pet.) (upholding court=s admission of
show-up identification where identification took place approximately twenty
minutes after witness had observed crime).

Therefore, under the totality of the circumstances, we do
not find that the show-up identification procedure gave rise to a substantial
likelihood of irreparable misidentification.  As such, the trial court did not
err in admitting Kienast=s in-court identification of appellant. 
We overrule issue one. 

III.  Legal and Factual Sufficiency








In issues two and three, appellant contends the evidence
was legally and factually insufficient to support his conviction for burglary
of a motor vehicle.  Specifically, appellant claims that the in-court
identification was insufficient to support the conviction because it was based
upon an impermissibly suggestive out-of-court identification.  In evaluating a
legal sufficiency claim attacking a jury=s finding of guilt,
we view the evidence in the light most favorable to the verdict.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  We do not ask whether
we believe the evidence at trial established guilt beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318B19 (1979). 
Rather, we determine only whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Cardenas v.
State, 30 S.W.3d 384, 389 (Tex. Crim. App. 2000).  In our review, we give
great deference A>to the
responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.=@  Clewis v.
State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996) (quoting Jackson,
443 U.S. at 319). 

In conducting a factual sufficiency review of the jury=s determination,
we do not view the evidence Ain the light most favorable to the
prosecution.@  Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). Rather, we consider all evidence in a neutral light and will
reverse only if (1) the evidence is so weak that the finding seems clearly
wrong and manifestly unjust or, (2) considering conflicting evidence, the
finding, though legally sufficient, is nevertheless against the great weight
and preponderance of the evidence.  See Watson v. State, 204 S.W.3d 404,
414B15 (Tex. Crim.
App. 2006).  However, it is not enough that we may harbor a subjective level of
reasonable doubt to overturn a finding that is founded on legally sufficient
evidence.  See id. at 417.  We cannot conclude that a finding is Aclearly wrong@ or Amanifestly unjust@ simply because,
on the quantum of evidence admitted, we would have voted differently had we
been the factfinder.  See id.  Nor can we declare that a conflict in the
evidence justifies a new trial simply because we may disagree with the
factfinder=s resolution of that conflict.  See id.  Rather,
before ordering a new trial, we must first be able to say, with some objective
basis in the record, that the great weight and preponderance of the (albeit
legally sufficient) evidence contradicts the verdict.  See id.








A person commits burglary of a motor vehicle if, without
the effective consent of the owner, he breaks into or enters a vehicle or any
part of a vehicle with intent to commit any felony or theft.  Tex. Penal Code Ann. ' 30.04(a) (Vernon
2003).  In a burglary of a motor vehicle prosecution, intent to commit theft
may be inferred from the circumstances.  See Simmons v. State, 590
S.W.2d 137, 138 (Tex. Crim. App. 1979). 








After reviewing the record, we conclude the evidence was
both legally and factually sufficient to support appellant=s conviction for
burglary of a motor vehicle.  Kienast, through his in-court identification,
testified that he saw appellant taking items from Tanner=s car and absconding
with them.[2] 
Moreover, Tanner, Melton, and Deputy Antoine later found appellant in
possession of Tanner=s amplifiers and CD case.  See id.
at 138 (holding evidence was sufficient to support burglary of vehicle
conviction where eyewitnesses testified that appellant leaned into open vehicle
belonging to another at night and removed property from vehicle and appellant
was later apprehended with property belonging to owner of vehicle).  Although appellant
claimed he had purchased the items from someone else and produced a receipt
purportedly reflecting such purchase, Tanner testified that the receipt did not
show any of the items taken from his car.  See Callahan v. State, 502
S.W.2d 3, 6 (Tex. Crim. App. 1973) (noting that jury is generally not bound to
accept appellant=s explanation of possession of recently
stolen property).  Appellant=s only witness, Deputy Larry Umfrid of the
Harris County Sheriff=s Office property room, testified that
appellant did not wear or possess a red t-shirt when brought into custody. 
However, given that appellant was shirtless when confronted by Tanner, Melton,
and Deputy Antoine, the jury could have reasonably inferred that the red
t-shirt Tanner testified he saw covering the stolen items was appellant=s.  See Clewis,
922 S.W.2d at 133.     

Thus, we hold that a rational trier of fact could have
found the essential elements of burglary of a motor vehicle beyond a reasonable
doubt and that the evidence is not so weak that the jury=s verdict is
clearly wrong and manifestly unjust or was against the great weight and
preponderance of the evidence.  We overrule issues two and three.  

Having overruled each of appellant=s issues, we
affirm the trial court=s judgment.  

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed September 13, 2007.

Panel consists of
Justices Yates, Seymore, and Edelman.*

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 

 

 

 

 

 

 

*  Senior Justice
Richard H. Edelman sitting by assignment.









[1]  A show‑up is a pretrial identification
procedure in which a suspect is confronted with a witness to or the victim of a
crime; unlike a lineup, a show‑up is a one‑on‑one
confrontation.  See Johnson v. State, No. 14‑04‑00979‑CR,
2005 WL 3489702, at *2 n.4 (Tex. App.CHouston
[14th Dist.] Dec. 22, 2005, no pet.) (not designated for publication).





[2]  As noted, appellant largely bases his legal and
factual sufficiency challenges on his assertion that the in-court
identification was insufficient to support the conviction due to the
impermissibly suggestive nature of the out-of-court identification.  We have
already held that the trial court properly admitted the in-court identification
because there was no substantial likelihood of misidentification at trial, and,
in any case, we consider all the evidence actually admitted at trial, whether
properly or not, in our legal and factual sufficiency review.  See Moff v.
State, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004); Powell v. State,
219 S.W.3d 498, 506 (Tex. App.CFort Worth
2007, pet. ref=d).