Affirmed and Memorandum Opinion filed August 18, 2009








Affirmed
and Memorandum Opinion filed August 18, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00465-CR

____________

 

RODNEY CANTRELL TURNER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 1111991

 



 

M E M O R A N D U M  O P I N I O N

Appellant Rodney Cantrell Turner appeals his
aggravated-robbery conviction, arguing  that the trial court erroneously denied
his motion to suppress in-court identification testimony from the complainant
and a witness because the in-court identification of appellant by these
witnesses allegedly was tainted by an impermissibly suggestive Ashow-up@ identification
procedure.  We affirm.

 








I.  Factual and Procedural Background

The complainant, Jose Cedillo, was robbed at gunpoint in
the parking lot of his apartment complex while returning home from work at
approximately 12:40 a.m.  Cedillo=s wife, Anna
Alvarado, witnessed the robbery from their nearby apartment window and called
the police.  Several hours later, appellant and another man were arrested at a
supermarket near Cedillo=s apartment complex.  Suspecting that the
two men had robbed Cedillo earlier in the evening, a police officer called
Cedillo and Alvarado and asked them to come to the supermarket to see if they
could identify the men in custody.  Later that day, Cedillo tentatively
identified appellant and Alvarado positively identified appellant in a 
police-station line-up.  

Appellant was charged with aggravated robbery and pleaded Anot guilty.@   Appellant filed
a pre-trial motion to suppress, seeking to prevent Cedillo and Alvarado from
identifying him at trial and alleging that any such identification would be
tainted by the impermissibly suggestive procedure that occurred at the
supermarket.  The trial court denied the motion to suppress.  After a trial,
the jury found appellant guilty of aggravated robbery and assessed punishment
at thirty-seven years= confinement. 

II.  Issue and Standard of Review 








Appellant raises a single appellate issue, asserting that
the trial court erred in denying his motion to suppress.[1]  
We review the trial court=s ruling on a motion to suppress under an
abuse‑of‑discretion standard.  Long v. State, 823
S.W.2d 259, 277 (Tex. Crim. App. 1991). We view the evidence adduced at a
suppression hearing in the light most favorable to the trial court=s ruling.  Champion
v. State, 919 S.W.2d 816, 818 (Tex. App.CHouston [14th
Dist.] 1996, pet. ref=d).  At a suppression hearing, the trial
court is the sole finder of fact and is free to believe or disbelieve any or
all of the evidence presented.  Id.  We give almost total deference to
the trial court=s determination of historical facts that depend
on credibility and demeanor, but review de novo the trial court=s application of
the law to the facts if resolution of those ultimate questions does not turn on
the evaluation of credibility and demeanor.  See Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997).

                                                    III.
Analysis

An in-court identification is inadmissible if it has been
tainted by an impermissibly suggestive pre-trial identification procedure.  Ibarra
v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).  We perform a two-step
analysis to determine the admissibility of an in-court identification. First,
we inquire whether the out-of-court identification procedure was impermissibly
suggestive; and if so, we then determine whether the suggestive procedure gave
rise to a very substantial likelihood of irreparable misidentification at
trial.  Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993).  It
is appellant=s burden to prove the in-court identification was
unreliable by establishing both of these elements by clear and convincing
evidence.  See id.  An analysis under these steps requires an
examination of the Atotality of the circumstances@ surrounding the
particular case and a determination of the reliability of the identification.  Cantu
v. State, 738 S.W.2d 249, 251 (Tex. Crim. App. 1987).  If the indicia of
reliability outweigh the influence of an impermissibly suggestive pretrial
identification, the identification testimony is admissible.  Delk, 855
S.W.2d at 706. 

                   Did
the trial court err in denying the motion to suppress?








In his motion to suppress, appellant challenged the Ashow-up@ identification of
appellant by Cedillo and Alvarado when appellant was in a police car in the
supermarket parking lot.  For the purposes of our analysis, we presume that this
Ashow-up@ procedure was
impermissibly suggestive, and we turn to the second step of the analysis to
determine whether this procedure rendered the in-court identifications by Cedillo
and Alvarado unreliable under the totality of the circumstances.  In conducting
this analysis, we must weigh the corrupting effect of the impermissibly
suggestive show-up identification procedure against the following factors to
determine whether the in-court identification is admissible:  

(1)     the opportunity of the witness to view the
perpetrator at the time of the crime; 

(2)     the witness=s degree of attention; 

(3)     the accuracy of the witness=s prior description of the
perpetrator; 

(4)     the level of certainty demonstrated by the
witness at the time of the confrontation; 

(5)     and the lapse of time between the alleged
act and the time of the confrontation.  

 

Ibarra, 11 S.W.3d at 195.

The evidence adduced at the suppression hearing, when
viewed in the light most favorable to the trial court=s ruling, shows
the following:

!       Cedillo was robbed at gunpoint in the parking
lot of his apartment complex while returning home from work at approximately
12:40 a.m. on April 11, 2007.  The robbery lasted about ten minutes.

!       Cedillo=s wife, Anna Alvarado, witnessed the robbery for about ten
minutes from their nearby second-story apartment window before she called the
police. There was outside lighting, and Alvarado could see the men who robbed
her husband. 

!       Officer Allen Casas arrived shortly
thereafter and took statements from both Cedillo and Alvarado.  

!       Approximately three hours later, Officer
Casas overheard a dispatch regarding a forgery in progress at a supermarket
near Cedillo=s apartment complex, and Officer
Casas drove to the supermarket.  

!       Officers on location arrested two men and
recovered Cedillo=s stolen wallet from one of the
men.  By the time Officer Casas arrived, the men were in custody and sitting in
the back of separate patrol cars. 








!       A different police officer called Cedillo and
Alvarado and told them that two thieves had been arrested, and that the police
officers wanted to see if Cedillo and Alvarado could identify the individuals
as the men who robbed Cedillo earlier that day.  Cedillo and Alvarado went to
the supermarket, and Officer Casas saw them arrive.  Officer Casas asked
Cedillo if the man in one of the police cars was one of the men who robbed
him.  At first, when they were at some distance from the patrol car, Cedillo
said he was not sure.  Then, Officer Casas and Cedillo walked closer to the
patrol car, and Cedillo identified the man as one of the robbers, but Officer
Casas was not sure Cedillo identified appellant or Bradley Thompson, the other
man with whom appellant was arrested at the supermarket.  Alvarado recognized
appellant and Thompson as the men who robbed her husband.  

!       Later that day, an officer called Cedillo and
Alvarado and told them that someone had been arrested and that the police officers
wanted Cedillo and Alvarado to come to a Houston Police Department office to
view a live line-up. The officers set up two five-men line-ups.  Appellant was
one of five men on one side and Thompson was one of five men on the other
side.  The other eight men were taken from the central jail, and were chosen
because they were the same race and gender and had physical characteristics
(such as height and weight) similar to either appellant or Thompson,
respectively.  None of the men in the line-ups were wearing jail clothing.  

!       Appellant and Thompson chose which position
they would occupy during the line-up.  Cedillo and Alvarado received
instructions in Spanish as to how the line-up would be conducted, and that they
should not make any comments between themselves during the line-up as to which
man, if any, was one of the robbers. Cedillo and Alvarado  were also told that
the men who robbed Cedillo might or might not be in the line-up.  The police
did not suggest in any way who, if anyone, Cedillo and Alvarado should
identify.

!       After viewing the line-up Cedillo and
Alvarado were interviewed separately.  Cedillo positively identified Thompson
and tentatively identified appellant.  Cedillo identified appellant because he
robbed Cedillo rather than based on seeing appellant in the police car at the
supermarket.  

!       Cedillo identified appellant at the
suppression hearing  because Cedillo recognized appellant from the robbery. 








!       Alvarado positively identified both Thompson
and appellant after viewing the line-up.  Alvarado identified appellant at the
line-up as one of the robbers because she recognized him from the robbery. 
Appellant was wearing the same white t-shirt and pants that he was wearing when
Alvarado saw him earlier in the police car, but he was not wearing the black
jacket that he had been wearing earlier.  

!       Alvarado
identified appellant as one of the robbers because she remembered him from the
robbery.  








Both Cedillo and Alvarado had an opportunity to view the
perpetrators during the commission of the crime.  Alvarado testified that she
witnessed the crime for ten minutes from a window that was ten feet away.
Outside lighting enabled her to see.  Cedillo indicated that he had his head
down during the robbery and that he did not see appellant very well.  Alvarado=s testimony shows
that she had a high degree of attention.  The record does not show any
discrepancy between a pre-identification description by Cedillo or his wife and
appellant=s description.  The Ashow-up@ procedure
occurred within six hours of the robbery.  Both Cedillo and Alvarado showed a
high level of certainty when they identified appellant at the suppression
hearing, which was slightly more than thirteen months after the robbery.  Both
Cedillo and Alvarado testified that their identifications of appellant were
from the actual robbery rather than based on what they saw during the Ashow-up@ procedure. 
Weighing this evidence of reliability against what we presume was the unduly
suggestive nature of the Ashow-up@ procedure, we
conclude that no substantial risk of irreparable misidentification was created
so as to deny appellant due process.[2] 
See Santos v. State, 116 S.W.3d 447, 453 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d) (holding that
unduly suggestive home video shown to complainant did not create substantial
risk of irreparable misidentification); Louis v. State, 825 S.W.2d 752,
757 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d) (holding that
even if Ashow-up@ identification
were impermissibly suggestive, it did not create substantial risk of
irreparable misidentification); Lewis v. State, 751 S.W.2d 895, 897B98 (Tex. App.CHouston [14th
Dist.] 1988, no pet.) (holding that Ashow-up@ identification
did not create substantial risk of irreparable misidentification). 
Accordingly, we conclude the trial court did not abuse its discretion by
denying appellant=s motion to suppress.  Having overruled
appellant=s sole issue on appeal, we affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

Panel
consists of Justices Frost, Brown, and Boyce.

Do Not
Publish C Tex. R. App. P. 47.2(b).









[1]  After counsel filed a brief on appellant=s behalf, appellant filed a pro se brief raising an
additional issue.  We will not address this issue as appellant has no right to
hybrid representation. See Scheanette v. State, 144 S.W.3d 503, 505 n.2
(Tex. Crim. App. 2004). 





[2]  In his brief, appellant makes two conclusory
statements that the line-up, as opposed to the Ashow-up,@ was impermissibly suggestive.  However, appellant
does not present this court with argument, analysis, case citations, or record
citations in support of these statements.  Therefore, appellant has failed to
adequately brief this point, and we do not address it.  See Tex. R. App. P. 38.1(i); King v.
State, 17 S.W.3d 7, 23 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d).